[S. F. No. 2665. Department Two.—September 26, 1903.]

HYMAN GREENBERG, Respondent, v. WESTERN TURF ASSOCIATION, Appellant.

EXCLUSION FROM RACE-TRACK—DAMAGES—PENALTY—CONSTITUTIONAL LAW—POLICE POWER.—The act of March 23, 1893, providing that the aggrieved party excluded from any place of amusement, including a race-track, may recover his actual damages for such exclusion, and one hundred dollars in addition thereto, is a valid and constitutional exercise of the police power.

ID.—EFFECT OF EXPRESS LAW.—Such enactment of express law supersedes the mere whim of the proprietor, so that he may no longer revoke personal license of a ticket of admission, subject to mere responsibility for the price of the ticket, and necessary expenses incurred in attending the place of amusement.

ID.—PLEADING—SINGLE VIOLATION OF STATUTE—IMPROPER EVIDENCE—SUBSEQUENT EXCLUSIONS.—Where the complaint charges a single violation of the statute on a day specified, evidence of subsequent purchases of tickets and exclusions of admission, and ejectment from the premises, is wholly without the pleadings, and inadmissible.

ID.—DAMAGES FOR EXCLUSION—INJURY TO BUSINESS NOT CONSIDERED.—The damages for exclusion from the race-track under the statute, are limited to the deprivation of the privilege enjoyed by the

plaintiff, in common with the rest of the public, in attending the place of amusement; and an injury to the plaintiff's business in publishing a paper devoted to racing news cannot be considered as an element of damage, and cannot justify evidence of subsequent exclusions from the race-track, other than the one charged in the complaint, nor instructions touching the impairment of plaintiff's business.

ID.—PUNITIVE DAMAGES—PENALTY NOT EXCLUSIVE—INSTRUCTION.—The provision of the statute for a penalty of one hundred dollars in addition to the actual damages, is not exclusive of punitive damages in a case justifying punitive damages; and it was proper to instruct the jury in accordance with section 2292 of the Civil Code that if they found the defendant had been guilty of oppression, fraud, or malice, actual or presumed, they might, in addition to actual damages, give damages for the sake of example, and by way of punishing the defendant.

ID.—EVIDENCE AS TO PUNITIVE DAMAGES—WEALTH OF DEFENDANT.— Where punitive damages are claimed in the case, evidence of the wealth of the defendant is admissible for the purpose of graduating the amount which it is proper to award.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. W. R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

D. E. Alexander, C. F. Gardner, and W. S. Goodfellow, for Appellant.

The court erred in permitting the defendant to prove any other acts of exclusion from the race-track not alleged in the complaint. No special damages are alleged, and only the proximate actual damage for the act complained of can be recovered. (*Treadwell* v. *Whittier*, 80 Cal. 579;[1] *Stevenson* v. *Smith*, 28 Cal. 103;[2] *Potter* v. *Froment*, 47 Cal. 165; Chitty's Pleadings, 16th Am. ed. 348; 2 Greenleaf on Evidence, sec. 254.) Remote and speculative injury to the plaintiff's business cannot be considered. (*Crow* v. *San Joaquin etc. Irrigation Co.*, 130 Cal. 309; *Muldrow* v. *Norris*, 2 Cal. 74-78;[3] *Giaccomini* v. *Bulkley*, 51 Cal. 260; *Chicago* v. *Huenerbein*, 85 Ill. 592; *Pollitt* v. *Long*, 58 Barb. 20-35; *Friend*

[1] 13 Am. St. Rep. 175.         [3] 56 Am. Dec. 313.
[2] 87 Am. Dec. 107.

*etc. Lumber Co.* v. *Miller,* 67 Cal. 464; *Wallace* v. *Ah Sam,* 71 Cal. 197.[1]) The statutory penalty should be strictly construed, as excluding all other recovery of punitive damages. The only actual damage was the money paid for the ticket. (*Purcell* v. *Dalcy,* 19 Abb. N. C. 301; *McCrea* v. *Marsh,* 12 Gray, 211.[2]) The legislature cannot interfere with the rights of private property in regulating places of amusement. (*District of Columbia* v. *Saville,* 1 McAr. 581.[3])

Sullivan & Sullivan, for Respondent.

The plaintiff pleaded loss to his business, and evidence on that question was admissible and plaintiff should recover therefor. (*Dwyer* v. *Carroll,* 86 Cal. 305; *Dexter* v. *Manley,* 4 Cush. 14; *Lambert* v. *Haskell,* 80 Cal. 611; *Hawthorne* v. *Siegel,* 88 Cal. 159;[4] *Bryson* v. *McCone,* 121 Cal. 153, 159; *Tahoe Ice Co.* v. *Union Ice Co.,* 109 Cal. 242; *Sanford* v. *East R. etc.,* 101 Cal. 280; *Shoemaker* v. *Acker,* 116 Cal. 244; *Hitchcock* v. *Supreme Tent etc.,* 100 Mich. 40;[5] *Hexter* v. *Knox,* 63 N. Y. 561.) Plaintiff was entitled to recover exemplary damages. (*Tiers* v. *Corkins,* 21 Kan. 722, 723; *Brown* v. *Evans,* 17 Fed. 912; *Burnett* v. *Hyde,* 6 Conn. 24; *Sloan* v. *Edwards,* 61 Md. 90; *McCarthy* v. *Niskern,* 22 Minn. 473; *Fry* v. *Bennett,* 4 Duer, 247; *Hayner* v. *Cowden,* 27 Ohio St. 292; *Meibus* v. *Dodge,* 38 Wis. 300.[6]) The condition and circumstances of wealth of the defendant were admissible on the question of exemplary damages. (*Belknap* v. *Boston and M. R. Co.,* 49 N. H. 348; *Spear* v. *Sweeney,* 88 Wis. 545.) The act here in question is valid, and governs the case. (*People* v. *King,* 110 N. Y. 418;[7] *Messenger* v. *State,* 25 Neb. 674.)

HENSHAW, J.—Defendant was the proprietor of a race-track known as the Tanforan Race-track, and was giving races to which the public was admitted. Plaintiff pleads that on the fifth day of December, 1899, he purchased a ticket of admission to the race-track, presented it to defendant, demanded admission, and his demand was refused. He pleads that he is, and was "on and prior to said 5th day of Decem-

[1] 60 Am. Rep. 534.
[2] 71 Am. Dec. 745, and note.
[3] 29 Am. Rep. 616.
[4] 22 Am. St. Rep. 291.
[5] 43 Am. St. Rep. 423.
[6] 20 Am. Rep. 6.
[7] 6 Am. St. Rep. 389.

ber, A. D. 1899, engaged in the business of printing and publishing a publication entitled 'Daily Racing Form,' which is, and was, a paper devoted to giving to the general public information and news concerning occurrences at the races run upon said race-track, and other race-tracks in the vicinity of said city and county of San Francisco, and from the publication and sale of which said plaintiff was deriving large profits; and that by reason of the aforesaid action of said defendant in refusing plaintiff admission to said race-track, as aforesaid, said plaintiff was unable to furnish through his said publication the customary news, by reason whereof the value of the same to the public was much impaired and the sales thereof, in consequence, greatly diminished to plaintiff's actual damage in the sum of ten thousand dollars.''

The action is prosecuted under a statute of the legislature, approved March 23, 1893, (Stats. 1893, p. 220,) entitled ''An act making it unlawful to refuse admission to places of amusement.'' That act provides that it shall be unlawful to refuse admission to ''any opera-house, theater, melodeon, museum, circus, caravan, race-course, fair, or other place of public amusement or entertainment, to any person over the age of twenty-one years who presents a ticket of admission acquired by purchase, and who demands admission to such place; provided, that any person under the influence of liquor, or who is guilty of boisterous conduct, or any person of lewd or immoral character, may be excluded from any such place of amusement.''

Section 2 of the act declares: ''Any person who is refused admission to any place of amusement contrary to the provisions of this act, is entitled to recover from the proprietor, lessee, or their agents, or from any person, association, corporation, or the directors thereof, his actual damages, and one hundred dollars in addition thereto.''

Appellant first attacks the constitutionality of this statute. But we think it to be a valid regulation imposed by the state in its exercise of the police power. In the earlier cases, where the state had not by statute imposed regulations, it is held that there is conferred upon the purchaser of a ticket to a place of public amusement a mere license revocable at the will of the proprietor of the place, that the proprietor may

revoke this license before or after admission to the place
of entertainment, and in so doing becomes responsible in
damages only for the price of the purchased ticket and such
necessary expenses as may have been incurred by its pur-
chaser in attending or in seeking to attend the entertainment.
(*Purcell* v. *Daley,* 19 Abb. N. C. 301; *Wood* v. *Leadbitter,*
13 Mees. & W. 838; *Burton* v. *Scherpf,* 1 Allen, 134;[1] *McCrea*
v. *Marsh,* 12 Gray, 211.[2])

But upon the other hand it is uniformly held that the state
has the power to speak in regulating such places of amuse-
ment, and that when it does so speak, it is with absolute au-
thority, and its express law supersedes the mere whim of
pleasure of the proprietor, so that he may no longer exercise
his right to revoke this personal license. (*Baylies* v. *Curry,*
128 Ill. 287; *People* v. *King,* 110 N. Y. 418;[3] *Messenger* v.
*State,* 25 Neb. 674; *Joseph* v. *Bidwell,* 28 La. Ann. 382;[4]
*Donnell* v. *State,* 48 Miss. 661;[5] *United States* v. *Newcombe,*
11 Phila. 519; Fed. Cas. No. 15,868; *Munn* v. *Illinois,* 94 U. S.
113.)   Thus, in *People* v. *King,* 110 N. Y. 418, it is said:—

"The business of conducting a theater or place of public
amusement is also a private business, in which any one may
engage in the absence of any statute or ordinance. But it has
been the practice, which has passed unchallenged, for the
legislature to confer upon municipalities the power to regu-
late by ordinance the licensing of theaters and shows, and to
enforce restrictions relating to such places, in the public in-
terest, and no one claims that such statutes are an invasion of
the right of liberty or property guaranteed by the constitu-
tion. . . .

"In the judgment of the legislature, the public had an in-
terest to prevent race discrimination between citizens on the
part of persons maintaining places of public amusement; and
the quasi-public use to which the owner of such a place de-
voted his property gives the legislature a right to interfere."

The complaint charges a single violation of the statute as
having occurred upon the fifth day of December, 1899, and
plaintiff's demand for damages is based wholly upon this

[1] 79 Am. Dec. 717.
[2] 71 Am. Dec. 745, and note.
[3] 6 Am. St. Rep. 389.
[4] 26 Am. Rep. 102.
12 Am. Rep. 375.

one refusal to admit him. At the trial evidence was admitted of subsequent purchases of tickets by the plaintiff and refusals of admission by the defendant, and testimony, moreover, of an ejectment by defendant of plaintiff after he had obtained admission to the grounds. It is manifest that this evidence is wholly without the pleadings in the case, for each one of these refusals and ejections, if unjustifiable, was a separate and distinct violation of the statute. But it is said in support of the court's ruling that, as the complaint charged an injury and destruction of plaintiff's business, evidence of these successive refusals was admissible in establishing this element of damage. But we do not think that in a case such as this an injury to the plaintiff's business is a proper element of damage to be considered at all, and hereby we do not mean that it is because of the remoteness of the alleged damage, or because the contemplated profits of the business are indeterminable and speculative, but because injury to plaintiff's business cannot, under the law, be made a damage charge against a defendant in a case such as this. The defendant is conducting a place of amusement. There is held out to the public under the guaranty of the statute the right to admission to this place of amusement and to the enjoyment of the pleasure which it affords. This is the right which the plaintiff had secured to him by the law, in common with all the other inhabitants of the state over the age of twenty-one years. But the defendant did not maintain its place of amusement to afford an occupation or means of livelihood to the plaintiff. His rights are the same as, but no greater than, those of the public generally. It was no more the duty of the defendant to admit him to the end that he might prosecute his business of publishing a racing form than it was to have admitted him to enable him to vend articles of merchandise upon the ground. Plaintiff's right, as we have said, was the right which he enjoyed in common with the rest of the public. By his action he claims a special privilege and special right which the law does not accord him,—that of pursuing his business in a place of amusement. Even a carrier, whose obligation is to transport passengers safely to their destination, is not bound by any such rule as is here contended for. The obvious object of a passenger is to reach his destination,

and it is the duty of the railroad company over whose lines he has purchased a ticket to see that he is transported with due dispatch and safety. Usually such a traveler in seeking his destination is going upon private business of a more or less momentous nature. If the railroad company wrongfully ejects such a passenger from its train, he is entitled to recoup for the value of his ticket, the expenses to which he is put in reaching his destination, injury to his feelings, and the like, but the loss which he may have sustained in his private business is not an element of damage, unless with full knowledge to the railroad company it sold him transportation, when it will be assumed that it undertook his transportation in view of that business. (1 Sedgwick on Damages, sec. 149; 3 Sutherland on Damages, secs. 938 et seq.) But the broad distinction rests in this, that the railroad company engages to transport passengers, many of whom require the transportation because of their business. The proprietor of a theater, racetrack, or other like place merely engages to furnish to his patrons two or three hours of amusement, such as it may be. He is in no way, beyond the furnishing of this amusement and in the providing of reasonable accommodations for the comfort and safety of his patrons, concerned at all in them or in their business affairs. It results, therefore, that the evidence introduced, and the instructions of the court touching the impairment or destruction of plaintiff's business by reason of the conduct of defendant, imported into the case an erroneous element of damage.

The court instructed the jury in accordance with section 3294 of the Civil Code, to the effect that if they found the defendant had been guilty of oppression, fraud, or malice, actual or presumed, they might, in addition to actual damages, give damages for the sake of example and by way of punishing the defendant. It is contended that as the statute itself provides that the plaintiff for the wrongful act may recover one hundred dollars in addition to his actual damage, this was error, in that the law itself had fixed the amount, and thus liquidated the punitive damages which may be permitted, and that the instruction thus authorized the jury to give additional punitive damages in excess of those permitted by the law. We think, however, that this objection is

not well taken. The statute, it is true, allows to the plaintiff one hundred dollars in addition to his actual damage. This sum is unquestionably a penalty which the law imposes, and which it directs shall be paid to the complaining party. But it will be noted that it is a penalty imposed in any and in every case, whether the rejection or refusal of admission was or was not done under circumstances of oppression or violence. The courteous refusal as much exposes a defendant to this penalty of the law as would a brutal expulsion. Moreover, while the law has seen fit to declare that it shall be paid to the complaining party, it might as well have directed that it be paid into the common-school fund. The imposition is in its nature penal, having regard only to the fact that the law has been violated and its majesty outraged. It is a matter aside and apart from any consideration of the plaintiff's feelings. It does not, therefore, exclude the operation of section 3294 of the Civil Code, but that section runs current with it, and, notwithstanding the imposition of the one hundred dollars penalty, in any proper case a plaintiff may recover damages, given by way of example for the personal indignity and wrong which have been put upon him.

As punitive damages were claimed in this case, evidence of defendant's wealth was admissible for the purpose of graduating the amount which it was proper to award. (*Barkly* v. *Copeland,* 74 Cal. 1;[1] *Brown* v. *Evans,* 17 Fed. 912; *Belknap* v. *Boston etc. Co.,* 49 N. H. 358.) These seem to be all the matters which in contemplation of a new trial are pertinent here to be considered.

For the foregoing reasons the judgment and order appealed from are reversed.

McFarland, J., and Lorigan, J., concurred.

Petition for hearing in Bank received too late to admit of consideration.

[1] 5 Am. St. Rep. 413.