[Civ. No. 63658. Second Dist., Div. Four. Mar. 28, 1983.]

PATRICIA MARSHALL, Plaintiff and Respondent, v.
WILLIAM E. BROWN et al., Defendants and Appellants.

COUNSEL

Haight, Dickson, Brown & Bonesteel, William G. Baumgaertner, Roy G. Weatherup and Robert L. Washburn for Defendants and Appellants.

Maginnis & Erwin and Russell F. Maginnis for Plaintiff and Respondent.

OPINION

WISOT, J.*—

### FACTS

Plaintiff brought suit against a former employer as an individual and against the corporation principally owned and managed by him, charging wrongful interference with prospective employment. Her complaint sought recovery under two separate causes of action: she alleged slander, and sought compensatory

---

*Assigned by the Chairperson of the Judicial Council.

and punitive damages; she also invoked the civil action authorized by Labor Code sections 1050[1] and 1054,[2] and sought treble damages under the latter statute. Both causes of action were based on statements of defendant Brown relayed to plaintiff by means of a letter from another prospective employer. The letter advised that employment was denied because defendant Brown had given an unsatisfactory report on plaintiff as an employee. The letter summarized defendant's statements to the effect that plaintiff was erratic in work hours, brought her personal problems to the office, had married another employee of defendant and caused that man to have a mental breakdown, and contradicted plaintiff's reason for leaving defendant's employ because of excessive overtime hours by saying that plaintiff never worked overtime.

In trial, plaintiff presented evidence showing that each of these statements was totally false, and was uttered with ill will and for the purpose of preventing plaintiff's future employment. Plaintiff testified that she worked for defendant and his legal directory publishing company intermittently during the years 1970 to 1974. She left his employ to work for another company; that company went out of business the following year. She then went looking for other jobs in the publishing field.

Jill Boxley testified that she was prepared to offer employment to plaintiff in October 1975. She was impressed with plaintiff as a person experienced in the publishing field. After talking with defendant Brown on the telephone, however, she denied plaintiff employment. She then wrote the letter to plaintiff stating that employment was denied because of the bad recommendation by defendant Brown.

George Ryan testified that he was employed by defendants from 1964 to 1972. During those years, defendant Brown had a policy of giving bad references to former employees, and instructed Ryan to follow that policy.

Defendant Brown and other witnesses testified that the only policy with regard to recommendations was not to give one. There was no policy to give bad recommendations to former employees. Other witnesses testified for both sides and various documents and time records were received as exhibits.

---

[1]Section 1050 of the Labor Code provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after having paid off an employee voluntarily leaving such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor."

[2]Section 1054 of the Labor Code provides: "In addition to and apart from the criminal penalty provided any person or agent or officer thereof, who violates any provision of sections 1050 to 1052, inclusive, is liable to the party aggrieved, in a civil action, for treble damages. Such civil action may be brought by such aggrieved person or his assigns, or successors in interest, without first establishing any criminal liability under this article."

After hearing the trial, the jury returned its general verdicts and special findings. In those findings, the jury determined that each defendant was responsible for a misrepresentation preventing plaintiff from obtaining employment. The jurors further found that each defendant slandered plaintiff. The verdict against Legal Directories Publishing Company assessed general damages of $40,000 and no punitive damages. The verdict against William Brown assessed general damages of $15,000 and punitive damages of $5,000. After consultation with counsel, the court advised the jury that the verdicts were inconsistent. The jurors were instructed that, having found liability of each defendant, the amounts of compensatory damages should be the same against both defendants. The jury returned to deliberations, to reconsider the matter of damages. They returned shortly thereafter with amended verdicts: $27,500 general damages against each defendant, punitive damages of $2,500 against each.

The trial court then required plaintiff to elect between the punitive damages awarded by the jury, or treble the compensatory damages of $27,500. Plaintiff chose the larger amount, and judgment was entered on September 12, 1980, for plaintiff and against each defendant for $82,500.

Thereafter plaintiff moved for additur, or for a new trial on damages only. Defendant moved for judgment notwithstanding the verdict, for remittitur and for a new trial. After hearing the arguments of counsel, the court issued its "Memorandum of Ruling" on November 10, 1980, stating, in effect, that by reason of inadequate instruction on joint and several liability, the jury had improperly apportioned damages of $60,000. Further, the trial court found that statutory treble damages are unconstitutional and excessive under the circumstances of this case. The motions of plaintiff and defendants for a new trial were then granted "upon the grounds of inadequate and excessive damages," but limited to the issue of damages; the order was conditioned so that if both sides were to consent to entry of a judgment of $55,000 compensatory and $5,000 punitive damages, then the motions were denied.

From this order, defendants appeal. Plaintiff expressly declines to cross-appeal because, in the opinion of her counsel, an appeal from that order could not be taken in good faith. Plaintiff's motion to dismiss the appeal was denied without prejudice; we were unable to say that the appeal is frivolous.

APPEAL FROM ORDER GRANTING PARTIAL NEW TRIAL

■ Code of Civil Procedure section 904.1, subdivision (d) authorizes an appeal from an order granting a new trial or denying a motion for judgment notwithstanding the verdict.

As a preliminary matter, we note that defendants' notice of appeal seeks review of the new trial order of November 10, 1980, "insofar as and to the extent that said order is limited to the ground of inadequate and excessive damages." Defendants further appeal from the denial of their motion for a new trial, and from the denial of their motion for judgment notwithstanding the verdict. Finally, defendants appeal from the judgment in the within action, "if any." When a motion for a new trial is granted the judgment is vacated. Since there is no longer a judgment, any appeal must be from the order granting a new trial. (*Neff* v. *Ernst* (1957) 48 Cal.2d 628, 634 [311 P.2d 849].)

In *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316], the Supreme Court stated at page 285: "Sahadi has appealed from the order granting a new trial insofar as the order limited the new trial to the issue of damages. Although Liodas challenges the propriety of such an appeal, it is well established that a party seeking a new trial on all issues is an 'aggrieved party' when only a partial new trial is granted, and may appeal therefrom. (*Spencer* v. *Nelson* (1947) 30 Cal.2d 162, 164-165 [180 P.2d 886]; *Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, 355 [87 Cal.Rptr. 226]; *Garcia* v. *San Gabriel Ready Mixt* (1959) 173 Cal.App.2d 355, 357 [343 P.2d 327].)"

*Spencer* v. *Nelson, supra,* 30 Cal.2d 162, is particularly instructive. In that case the court not only authorized the appeal from an order granting a partial new trial, but also dismissed the purported appeal from the judgment. The parties in that case stood in a substantially similar relationship to the granting of a new trial as do the parties in the instant case. Defendants herein sought a new trial; a partial new trial was ordered; plaintiff, the successful party at the trial, is satisfied with the order granting the limited new trial and not only has not appealed therefrom but is actually seeking to dismiss defendants' appeal. "In this situation, with neither party opposing the granting of a new trial, one seeking it in general form, the other in limited form, it is plain that the decision on this appeal will be to sustain the order granting a new trial in one form or another." (*Spencer* v. *Nelson, supra,* at p. 165.) On that basis, it is clear that defendants' appeal, if any, from the judgment of September 12, 1980, must be dismissed.

### SCOPE OF APPEAL

■ The decision to grant a new trial, on all or some issues, appropriately rests in the discretion of the trial court. It is presumed that in considering the motion the court has weighed the evidence and the possibility of prejudice to either side. The decision of the trial court will not be reversed on appeal absent an abuse of discretion. (*Leipert* v. *Honold* (1952) 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R.2d 1185].) "Such an abuse is shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sym-

pathy, or compromise or that for some other reason the liability issue has not actually been determined." (*Leipert* v. *Honold, supra,* at p. 467.)

In *Leipert* v. *Honold,* the court reversed an order granting a new trial limited to damages. The court there found that the issue of liability was very close, and there was no doubt that the damages awarded plaintiff were inadequate. Further, the verdicts reflected a compromise. None of these conditions prevail in the instant case. ■ Although there was evidence disputing whether defendant Brown uttered the false statements, and whether the utterance was attended with ill will, the trial court found the jury's determination of liability to be fully supported by the evidence. The only problem with the verdicts, according to the judge's specification of reasons for granting a new trial, was that there appeared to be an improper apportioning of damages. The apportionment in no way compromised the determination of liability.

In the circumstances of this case, the jury's confusion did not derive from any question of liability dependent on differing measures of damages between the defendants. The facts here are unlike those in *Liodas* v. *Sahadi, supra,* 19 Cal.3d 278, where the measure of damages was different depending upon whether defendant was found liable as a fiduciary or nonfiduciary.

In this case the record clearly demonstrates that the trial court reviewed the sufficiency of the evidence to sustain the jury's findings with respect to the question of liability. The court was well aware that the liability of both defendants derived from the misrepresentations made by defendant Brown. The court knew that damages from such injury were indivisible and not to be apportioned, and that there should be only one amount of compensatory damages against both defendants. We cannot say that the trial court erred in finding that the general verdicts reflect apportionment of a $60,000 figure determined by the jury as a total award. A new trial limited to damages is the appropriate relief under these circumstances. (*Mixon* v. *Riverview Hospital* (1967) 254 Cal. App.2d 364 [62 Cal.Rptr. 379].) When a trial judge has exercised discretion to grant a limited new trial, the order will be upheld "where the issue reserved as final has been fully, fairly and separately determined by the trier of fact and no injustice will result." (*Baxter* v. *Phillips* (1970) 4 Cal.App.3d 610, 616 [84 Cal.Rptr. 609].)

We recognize that "[t]he purpose of limited retrials is to expedite the administration of justice by avoiding costly repetition." (*Leipert* v. *Honold, supra,* 39 Cal.2d at p. 466.) With a view toward economy of appellate review, we do not address other issues raised by defendants and not likely to be renewed in a new trial limited to damages. We therefore defer any consideration of the admissibility of the testimony of Jill Boxley, neither do we review the assignments of misconduct by counsel urged on this appeal. Any consideration

of these issues will have to await entry of a judgment, from which defendants will then have a right of appeal. (Cf. *Horton* v. *Jones* (1972) 26 Cal.App.3d 952, 958 [103 Cal.Rptr. 399].) For the guidance of the trial court we turn now to several questions raised by the parties which are certain to recur in a new trial on the issue of damages.

### Testimony of George Ryan

George Ryan testified that he was a managerial employee of defendants from 1964 to 1972. He was instructed to give bad recommendations concerning former employees; sometime between 1964 and 1966, defendant Brown personally told him to "shoot them down in flames." He last discussed this policy matter with defendant Brown sometime before 1970. He knew plaintiff during her years of employment with the company as a good employee. Mr. Ryan admitted that he disliked Mr. Brown.

■ Defendants urge that the testimony of George Ryan is inadmissible because (1) too remote from the 1975 cause of action involved here, (2) improper character evidence, and (3) some testimony attempted to be elicited by defendants was precluded by the court as too remote. Responding to defendants' objection under Evidence Code section 352, the trial court found that the policy of giving bad recommendations existed until 1972, when Mr. Ryan left defendants' employ. The jury could infer, the court found, that the same policy continued until 1975. The weight of the testimony remained within the province of the jury. This exercise of discretion by the trial court fully comports with its responsibility under *People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468], to articulate the considerations underlying the ruling of admissibility. There was no abuse of discretion in overruling defendants' objection to the evidence as too remote.

■ The thrust of Mr. Ryan's testimony was to establish defendant's policy of giving bad recommendations. Defendants miss the point when they characterize the testimony as character evidence. Instead, the testimony was properly admissible under Evidence Code section 1105, allowing evidence of habit or custom to prove conduct on a specified occasion. The fact that the evidence also tended to infer that defendant Brown was an unpleasant person was incidental. Of course, this evidence might also infer malice or oppression, and be relevant, therefore, to the question of punitive damages.

■ Finally, defendants urge that they have been treated unfairly because the court precluded testimony that in 1972 defendant Brown had attempted to help plaintiff with a problem in her neighborhood. A crematory next door was sending ashes into her back yard. The offer of proof was that defendant Brown contacted politicians in the area to resolve the problem. We see no error in precluding this testimony. As the trial court found, it has no relevance to the

question of defendants' policy toward former employees. Neither does it tend to show the malice or lack of it in implementing that policy. Defendant Brown's attitude towards plaintiff while in his employment was not the issue to be proved.

## CONSTITUTIONALITY OF STATUTORY TREBLE DAMAGES

■ Applying *Hale* v. *Morgan* (1978) 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512], the trial court found that under the circumstances of this case an award of $82,500 achieved by trebling compensatory damages of $27,500 was unconstitutional. The court reached this result particularly after noting the disparity between this amount and the $5,000 awarded by the jury after being instructed on the function of punitive damages. Different remedies, of course, may provide different measures of relief; in our view, a disparity in amount resulting from the application of different remedies does not render the statutory remedy unconstitutional.[3]

In *Hale* v. *Morgan, supra,* 22 Cal.3d 388, a tenant in a mobilehome park failed to make rental payments for three months. In retaliation, the landlord disconnected the water and electricity. The tenant sued the landlord and sought the remedy provided by Civil Code section 789.3 of a $100-per-day penalty. Mechanical application of this penalty would have resulted in a recovery of $36,500. Even though the trial court awarded only one-half of that amount, the Supreme Court struck down the award as confiscatory and wholly disproportionate to the legitimate legislative goals of the statute. The Supreme Court ruled that a penalty violates due process when it is "mandatory, mechanical, potentially limitless in its effect regardless of circumstances, and capable of serious abuse." (*Hale* v. *Morgan, supra,* at p. 404.) The operation of such a statute could convert the landlord's single wrongful act into a financial bonanza for the tenant, who might soon own the mobilehome park by reason of the accumulated penalty. Such a situation does not appear in the case before us.

Counsel have found no cases interpreting Labor Code section 1054; our research similarly has disclosed none. Counsel offer a persuasive analogy, however, to federal provisions allowing private treble damages for destruction of a business, under the Clayton Act. 15 United States Code, section 15 provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . without respect to the amount in controversy, and shall recover threefold the damages

---

[3]The facts before us are to be distinguished from the case where there is more than one injury incurred, giving rise to more than one measure of damages. (See *State of California* v. *Southern Pacific Co.* (1982) 133 Cal.App.3d 862, 872 [184 Cal.Rptr. 271].) Here, the statements of defendant Brown constituted both slander and a misrepresentation preventing a former employee from obtaining employment. Further, the statements were uttered only once, so far as this record shows, causing only a single injury.

by him sustained, and the cost of suit, including a reasonable attorney's fee." It has been held that the purpose of this statute is not merely to redress injury to the individual, but to aid in allowing the broad social object of the statute. (*Karseal Corporation* v. *Richfield Oil Corporation* (9th Cir. 1955) 221 F.2d 358, 365.) The purpose of statutory treble damages is to deter violations and encourage private enforcement of the act. (*Pollock & Riley, Inc.* v. *Pearl Brewing Company* (5th Cir. 1974) 498 F.2d 1240.)

Labor Code section 1054 does direct a mandatory, mechanical award to the successful plaintiff. The award, however, is not potentially limitless. Defendants in the case before us do not contest the constitutionality of the remedy provided by this statute. We are not prepared to say that the statute does not serve legitimate legislative goals.

## INSTRUCTION OF THE JURY ON TREBLE DAMAGES

■ Defendants urge that the jury should be instructed that their finding of damages will be trebled. Relying upon *Sweet* v. *Erickson* (1958) 166 Cal. App.2d 598 [333 P.2d 369], defendants reason that the jury must be so informed in order to avoid an exaggerated finding of compensatory damages. It appears that the jury in that case was instructed on treble damages only to avoid confusion between the complaint charging conversion of logs and the statutory basis for recovery which authorized treble damages for injuries to trees. Our reading of the case does not suggest that it was the province of the jury to consider the statutory enhancement of actual damages. Turning again for guidance to federal interpretations of the Clayton Act, we find the following determination: "[I]t is not for the jury to determine the amount of a *judgment*. Its function is to compute the amount of *damages*. Congress's authorization in 15 U.S.C.A. § 15 to triple the award of damages is a matter of law to be applied by the district court without interference from the jury. The fact that the awarded amount will be tripled has no relevance in determining the amount a plaintiff was injured by the anti-trust violation." (Italics in original.) (*Pollock & Riley, Inc.* v. *Pearl Brewing Company, supra,* 498 F.2d at p. 1243, rehg. den. 504 F.2d 760, cert. den. 420 U.S. 992 [43 L.Ed.2d 673, 95 S.Ct. 1427].)

## ELECTION BETWEEN STATUTORY OR PUNITIVE DAMAGES

■ Both plaintiff and defendants concur on appeal that statutory damages and punitive damages arising out of the same cause of action are not mutually exclusive. "The fact that such a statutory penalty [treble damages] . . . is imposed for a particular wrongful act does not preclude recovery of punitive damages in a tort action where the necessary malice or oppression is shown . . ." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 849, p. 3143.) Case authority is to the same effect. In *Greenberg* v. *Western Turf Assn.* (1903) 140 Cal. 357 [73 P. 1050], the Supreme Court authorized both punitive

damages, under Civil Code section 3294, and a statutory penalty of $100 in addition to actual damages. The court there distinguished between punitive damages that depend upon a showing of malice or oppression of the plaintiff, and a penal provision awarded to the plaintiff because a "law has been violated and its majesty outraged." (*Greenberg, supra,* at p. 364.)

In *Piluso* v. *Spencer* (1918) 36 Cal.App. 416 [172 P. 412], a $50 penalty fixed by statute was held to not limit an award for punitive damages for malice or oppression. The jury in that case was instructed that a maximum recovery of $2,500 was allowed and that this figure should include the $50 provided by statute. The instruction was approved as being in harmony with the principle announced in *Greenberg, supra. (Piluso, supra,* at p. 424.)

Multiple damage awards are authorized in many different provisions of law, and may be characterized by statute as either multiple damages or a penalty. (See *Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 174 [46 Cal.Rptr. 65]; see also Lab. Code, § 5814, Agr. Code, § 21855.) These multiple damage awards reflect different social objectives. Because we deem Labor Code section 1054 to have a punitive purpose, to deter violations and encourage private enforcement, we find that its treble damage provision is mandatory and not discretionary. By analogy to the Clayton Act, the purpose of the Labor Code provision can only be given effect if so construed. (Cf. *Uneedus* v. *California Shoppers, Inc.* (1978) 86 Cal.App.3d 932, 942 [150 Cal.Rptr. 596].)

We further recognize that "[t]he primary purpose of punitive damages is to punish the defendant and make an example of him." (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) Since this purpose is the same as the treble damages authorized by Labor Code section 1054, we do not sanction a double recovery for the plaintiff. In the new trial on damages, the jury should be instructed on the subject of punitive damages based on malice or oppression. (See BAJI No. 14.71.) Any verdict finding compensatory damages must be trebled by the court. Plaintiff may then elect to have judgment entered in an amount which reflects either the statutory trebling, or the compensatory and punitive damages. This procedure, in our view, gives effect to Labor Code section 1054 and is consistent with the foregoing authorities.

The order granting a new trial limited to damages is affirmed.

McClosky, Acting P. J., and Amerian, J., concurred.