[No. S014800. Mar. 28, 1991.]

KENNETH W. KIZER, as Director, etc., Plaintiff and Appellant, v. COUNTY OF SAN MATEO, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Charlton G. Holland, Assistant Attorney General, Stephanie Wald and Angela Botelho, Deputy Attorneys General, for Plaintiff and Appellant.

Thomas F. Casey III, County Counsel, Deborah Penny Bennett and Peter K. Finck, Deputy County Counsel, for Defendant and Respondent.

## OPINION

PANELLI, J.—We granted review to determine whether Government Code section 818[1] prevents the state from imposing statutory civil penalties pursuant to the Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.; hereafter the Act)[2] on a state-licensed, county-operated, long-term health care facility. We conclude that it does not.

Respondent County of San Mateo, Department of Health Services (the County), is licensed by the State Department of Health Services (the

---

[1] Government Code section 818, part of the Tort Claims Act (Gov. Code, § 810 et seq.) provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

[2] Hereafter, all statutory references are to the Health and Safety Code unless otherwise indicated.

Department) to operate Crystal Springs Rehabilitation Center (Crystal Springs), a long-term health care facility in San Mateo County. Appellant Kenneth W. Kizer, M.D., M.P.H., is the director of the Department.

Licensed health care facilities must demonstrate an ability to comply with statutory requirements. (See, generally, § 1250 et seq.) The Act authorizes the Department to inspect such facilities for compliance with statutes and regulations on patient care and to issue citations to noncomplying facilities. (§§ 1421, 1423; *Myers* v. *Eastwood Care Center, Inc.* (1982) 31 Cal.3d 628, 631 [183 Cal.Rptr. 386, 645 P.2d 1218]; *Lackner* v. *St. Joseph Convalescent Hospital, Inc.* (1980) 106 Cal.App.3d 542, 546 [165 Cal.Rptr. 198].) The Department is authorized to enter any facility for inspection (§ 1421), and must inspect every facility at least once every two years (§ 1422, subd. (b)) or upon receipt of a complaint (§§ 1419, 1420). When the Department observes a violation of a statute or regulation, it issues a citation to the facility. (§ 1423.) Citations are classified according to the seriousness of the violation, and a penalty range is prescribed for each class.

Among the criteria that define a class AA violation, the most serious class, is a determination by the Department that the violation was "a direct proximate cause of death of a patient." (§ 1424, subd. (b).) The penalty for a class AA violation is not less than $5,000 and not more than $25,000. (*Ibid.*) Class A violations are those that present either an imminent danger or a substantial probability that death or serious harm to patients would result. The penalty for a class A violation is not less than $1,000 and not more than $10,000. (§ 1424, subd. (c).) Class B violations are violations that "have a direct or immediate relationship to the health, safety, or security of . . . patients, other than class 'AA' or 'A' violations." The penalty for a class B violation is not less than $100 and not more than $1,000. (§ 1424, subd. (d).) Failure to correct a violation within a specified time may result in an additional penalty of $50 for each day that the deficiency continues. (§ 1425.) Repeated violations may result in a trebling of the penalty assessed. (§ 1428, subd. (f).)

Penalties paid by a licensee for violations are applied against the Department's accounts to offset its enforcement costs. (§ 1428, subd. (j).) A licensee may contest a citation and penalty assessment by requesting an administrative "citation review conference." When a licensee contests a class AA or class A citation after the administrative review, the Attorney General must "promptly take all appropriate action to enforce the citation and recover the penalty . . . in the court of competent jurisdiction for the county . . . ." (§ 1428, subds. (a), (b); see *Myers* v. *Eastwood Care Center, Inc., supra,* 31 Cal.3d at p. 632.) Judicial review of class B citations is also available, but must be initiated by the licensee. (§ 1428, subd. (c).)

The Act also provides an enforcement mechanism when the Department has not taken action and violations have not been corrected. A civil action for damages may be prosecuted by either the Attorney General or a private party. The damages recoverable in such an action are not to exceed the maximum amount of civil penalties that could be assessed for the violation. (§ 1430, subd. (a).)[3] Section 1430 does not foreclose civil actions for damages by patients who have been injured by a violation; the remedies specified in that section are "in addition to any other remedy provided by law." (§ 1430, subd. (c).)

Several provisions of the Act are intended to provide information to the public about the citation record of facilities. The Department must prepare periodic reports listing the number, nature, and disposition of citations issued to each licensee during the preceding 12-month period and must issue public information releases identifying facilities that have had no violations in the past 12 months. (§§ 1430.5, 1435, 1435.5.) A facility must post notices informing the public that copies of citations for certain violations are available on request. (§ 1429.) Failure to correct a violation for which a citation was issued is a ground for license suspension or revocation. For each class AA violation within a 12-month period that has become final, the Department "shall consider" the suspension or revocation of the facility's license. (§ 1424, subd. (b)(3).)

As this summary illustrates, the Legislature has enacted a detailed statutory scheme regulating the standard of care provided by skilled nursing facilities to their patients. As section 1417.1 of the Act states: "It is the intent of the Legislature in enacting this chapter to establish (1) a citation system for the imposition of prompt and effective civil sanctions against long-term health care facilities in violation of the laws and regulations of this state relating to patient care; (2) an inspection and reporting system to insure that long-term health care facilities are in compliance with state statutes and regulations pertaining to patient care; and (3) a provisional licensing mechanism to insure that full-term licenses are issued only to those long-term health care facilities that meet state standards relating to patient care." The Act's provisions are designed to implement the Legislature's declared public policy objective of "assur[ing] that long-term health care facilities provide the highest level of care possible." (§ 1422, subd. (a).)

In this case the Department issued one class AA and two class A citations to Crystal Springs. According to the citations, Crystal Springs's

---

[3] In addition, a resident or patient of a skilled nursing facility or an intermediate care facility may bring a civil action against the licensee of any such facility that violates certain rights of any resident or patient; in such an action the licensee is liable for up to $500 and may be enjoined from permitting the violation to continue. (§ 1430, subd. (b).)

violations of patient care regulations resulted in one patient's death and in imminent danger or substantial probability of harm to two others. The penalties assessed were $27,750. The Department upheld the penalties at a citation review conference. When the County contested the administrative decision, the Department filed the present civil action to affirm the citations and assess the penalties. Relying on our decision in *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30 [127 Cal.Rptr. 122, 544 P.2d 1322] (hereafter *Younger*), the County demurred, arguing that the penalties were punitive or exemplary damages, and that Government Code section 818 forbids the imposition of such damages on public entity. The trial court sustained the demurrer without leave to amend and dismissed the action.

The Court of Appeal affirmed, however. Feeling itself bound by *Younger*, *supra*, 16 Cal.3d 30, the court "reluctantly" concluded that, unlike a private facility, a county facility is immune from liability for the civil penalties. The Court of Appeal, however, pointed out the limitation of *Younger*'s analysis as applied to statutory penalty schemes which do not have a compensatory function, and urged us to review this case.

■■■ We conclude that the Tort Claims Act in general, and Government Code section 818 in particular, are not applicable in this case. Furthermore, our decision in *Younger* does not compel the conclusion that the statutory civil penalties imposed by the Department are barred by Government Code section 818. *Younger* involved a discharge of oil into the Oakland Estuary from privately owned oil storage tanks located on property owned by the Port of Oakland, a public entity. At an administrative hearing, it was determined that both the port and the private property owner were responsible for the discharge. The state brought an action against both responsible parties for civil penalties under Water Code section 13350, subdivision (a). The port brought a motion for judgment on the pleadings on the basis of Government Code section 818, and the trial court granted the motion. We vacated the judgment on the pleadings because we found that the statutory penalties imposed were not punitive damages within the meaning of Government Code section 818. (*Younger*, *supra*, 16 Cal.3d at p. 39.)

In *Younger*, *supra*, 16 Cal.3d 30, it was not necessary to the resolution of the case to address the question of whether the Tort Claims Act was applicable to the civil penalties imposed under the Water Code. We did not need to address this question since we determined that the civil penalties were not punitive damages within the meaning of Government Code section 818. In essence, the *Younger* analysis presumed that Government Code section 818 was applicable and concluded that even if the Tort Claims Act applied, the port was liable for the civil penalties.

As we explained in *Younger*, damages which are punitive in nature, but are not simply or solely punitive in that they fulfill legitimate and fully justified compensatory functions, have been held *not* to be punitive damages within the meaning of Government Code section 818. (*Younger, supra*, 16 Cal.3d at pp. 35-36. See also *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; *State Dept. of Corrections* v. *Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885 [97 Cal.Rptr. 786, 489 P.2d 818].) We concluded that because the Water Code penalties were compensatory as well as punitive, they were not punitive damages within the meaning of Government Code section 818 and therefore could be recovered from a public entity. (*Younger, supra*, 16 Cal.3d at pp. 35-39.)

Unlike *Younger*, the present case specifically raises the question of whether the Tort Claims Act applies to the statutory civil penalties imposed by the Department. We conclude that nothing in the Tort Claims Act suggests that Government Code section 818 was intended to apply to statutory civil penalties such as the penalties at issue here. Enacted in 1963, the Tort Claims Act is the result of a study conducted by the California Law Review Commission (the Commission) in response to our decision in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], abolishing the doctrine of sovereign immunity in tort actions in California. The Tort Claims Act is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for *torts*.[4]

The Tort Claims Act specifies the cases in which a public entity is liable for *injuries* arising out of its acts or omissions, or those of its employees. (See, e.g., Gov. Code, §§ 815, 815.2, 815.4, 815.6, 818.2, 818.4, 818.6, 818.7, 818.8.) The Tort Claims Act defines "injury" as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person." (Gov. Code, § 810.8.) ■ Thus, Government Code section 818 in context means that, under the Tort Claims Act, a plaintiff who alleges injury caused by a public entity may be entitled to actual damages for that injury, but not punitive damages. (See *McAllister* v. *South Coast Air Quality etc. Dist.* (1986) 183

---

[4]The County argues that the Legislature intended to cover a wider range of liabilities than torts. The County points to the comment to Government Code section 815, emphasizing this passage: "the use of the word 'tort' has been avoided . . . to prevent the imposition of liability by the courts by reclassifying the act causing the injury." The comment, however, also states that "the practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." (*Ibid.*) Moreover, the introductory comment to the Tort Claims Act as a whole states that "a statute should be enacted providing that public entities are not liable for torts unless they are declared to be liable by an enactment." (Comment 1, Tort Claims Act.) Clearly, the emphasis of the Tort Claims Act is on *torts*.

Cal.App.3d 653, 656-659 [228 Cal.Rptr. 351]; *Austin* v. *Regents of University of California* (1979) 89 Cal.App.3d 354, 358-359 [152 Cal.Rptr. 420].)
██ Like the Court of Appeal, we find nothing in the Tort Claims Act to suggest that Government Code section 818 was intended to apply to statutory civil penalties designed to ensure compliance with a detailed regulatory scheme, such as the penalties at issue in the present case, even though they may have a punitive effect. The Department's citation enforcement action lies outside the perimeters of a tort action and therefore does not readily lend itself to a liability analysis based on tort principles.

Nowhere in the Tort Claims Act does the Legislature indicate an intention to immunize public entities from monetary sanctions authorized by the Legislature and imposed for failure to observe minimum health and safety standards adopted to protect and prevent injury to patients. Granting immunity to public entities from the penalties would be contrary to the intent of the Legislature to provide a citation system for the imposition of prompt and effective civil sanctions against long-term health care facilities in violation of the laws and regulations of this state. (§ 1417.1.)

In our view, Government Code section 818 was not intended to proscribe all punitive sanctions. Instead, the section was intended to limit the state's waiver of sovereign immunity and, therefore, to limit its exposure to liability for actual compensatory damages in tort cases. The Tort Claims Act must be read against the background of general tort law. (See Van Alstyne,[5] Cal. Government Tort Liability Practice (1980) § 2.7, p. 36.) Against that background, the Tort Claims Act does not apply to the type of sanction that the Legislature has imposed in this case to enforce the Act's regulatory scheme. Under the Long-Term Care, Health, Safety, and Security Act of 1973, the essential prerequisite to liability is a violation of some minimum health or safety standard rather than "injury" or "damage." Consequently, we do not believe that the Legislature intended the immunity created by Government Code section 818 to apply to statutory civil penalties expressly designed to enforce minimum health and safety standards.

The County argues that the statutory civil penalties imposed under the Long-Term Care, Health, Safety, and Security Act are primarily punitive and hence cannot be recovered from a public entity. We disagree. Government Code section 818, upon which the County's argument is based, "exempts public entities from liability for punitive or exemplary damages." (Cal. Law Revision Com. comment to Gov. Code, § 818.) ██ In tort actions, damages are normally awarded for the purpose of compensating the

---

[5] Professor Van Alstyne was a consultant to the California Law Review Commission during the drafting of the California Tort Claims Act of 1963.

plaintiff for injury suffered, i.e., restoring the plaintiff as nearly as possible to his or her former position, or giving the plaintiff some pecuniary equivalent. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1319.) When, however, the defendant's conduct is outrageous, additional damages may be awarded to punish the defendant and to deter such conduct in the future. (See *id.* at § 1327; see also Rest.2d Torts, § 908, subd. (1).) Punitive or exemplary damages "are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious . . . ." (*Newport* v. *Facts Concerts, Inc.* (1981) 453 U.S. 247, 266-267 [69 L.Ed.2d 616, 632, 101 S.Ct. 2748].) In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages. (See Civ. Code, § 3294; *Mother Cobb's Chicken T., Inc.* v. *Fox* (1937) 10 Cal.2d 203, 205 [73 P.2d 1185]; *Hilliard* v. *A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391 [196 Cal.Rptr. 117]; compare Rest.2d Torts, § 908, com. c.) Even nominal damages, which can be used to support an award of punitive damages, require actual injury. (*Fields* v. *Napa Milling Co.* (1958) 164 Cal.App.2d 442, 447-448 [330 P.2d 459, 68 A.L.R.2d 1052].) When punitive damages are appropriate, they are awarded in a discretionary amount by the trier of fact, who may consider evidence of the defendant's financial condition (inadmissible in the compensatory damage phase of the trial), and only after a defendant has been found guilty of oppression, fraud, or malice. (Civ. Code, § 3295, subd. (d).)

 Civil penalties under the Act, unlike damages, require no showing of actual harm per se.[6] Unlike damages, the civil penalties are imposed according to a range set by statute irrespective of actual damage suffered. (See 6 Witkin, *op. cit. supra*, § 1332 at p. 790; Health & Saf. Code, § 1424.) Moreover, civil penalties, unlike punitive damages, are imposed without regard to motive and require no showing of malfeasance or intent to injure. (See *Greenberg* v. *Western Turf Assn.* (1903) 140 Cal. 357, 363-364 [73 P. 1050].) The civil penalties under the Act can be imposed for negligent conduct and it is not necessary for the Department to allege or prove that a health facility's actions in violating specific health and safety regulations are malicious, wilful, or even intentional. Whereas damages serve to compensate the victim, the civil penalties under the Act are to be applied to offset the state's costs in enforcing the health and safety regulations. (§ 1428, subd. (j).)

While the civil penalties may have a punitive or deterrent aspect, their primary purpose is to secure obedience to statutes and regulations imposed

---

[6] Imposition of a class A or B citation requires no showing of injury at all. (§§ 1424, subd. (c), 1424, subd. (d).) Imposition of a class AA citation does require a showing that the health care facility's violation of the regulations was a "direct proximate cause of death of a patient." (§ 1424, subd. (b).) Even in the case of a class AA violation, however, the regulatory penalty is imposed because of the *violation of the regulations*, not because of the injury per se.

to assure important public policy objectives. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; see also, *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1598 [265 Cal.Rptr. 719] ["Thus, while both exemplary damages and statutory damages serve to motivate compliance with the law and punish wrongdoers, they are distinct legal concepts, one of which is entrusted to the factfinder, the other to the Legislature."].) The focus of the Act's statutory scheme is *preventative*. Section 1424 protects patients from "imminent danger" or "substantial probability" of harm (class A violations) and even from situations having a "direct and immediate relationship to the health, safety, and security of patients" (class B violations). Under its licensing authority, the Legislature has mandated standards to ensure quality health care. The regulations establish that what the Legislature and the Department are seeking to impose are measures that protect patients from actual harm, and encourage health care facilities to comply with the applicable regulations and thereby *avoid* imposition of the penalties. (See, generally, Cal. Code Regs., tit. 22, § 72001 et seq.)

Furthermore, we find nothing in the statutory scheme that suggests that state and other government health facilities should be treated differently than private facilities. The statutory scheme regulating nursing homes clearly contemplates that a single standard of care apply to all long-term skilled nursing facilities whether privately or publicly owned. (See §§ 1253 [necessity of license], 1254 [the Department to inspect and license health facilities], 1277, subds. (a) & (d) [both private and public licenses must comply with applicable rules and regulations]; Cal. Code Regs., tit. 22, § 72001 et seq. [specific regulatory requirements].) Section 1277, subdivision (d) states: "The state department shall apply the same standards to state and other governmental health facilities that it licenses as it applies to health facilities in private ownership . . . ." Like the Court of Appeal, we can "perceive no significant public policy reason to exempt a state licensed health-care facility from liability for penalties under the [Long-Term Care, Health, Safety, and Security] Act simply because it is operated by a public rather than a private entity . . . ."

The County basically argues for a two-tiered system of enforcement of the Health and Safety Code provisions. Under the County's scheme for implementing the Act, private nursing homes would be subject to the statutory fines, while nursing homes operated by a public entity would only be subject to suits by private parties or the Attorney General for injunctive relief and civil damages. This procedure contradicts the very public policy that the Legislature sought to implement with the citation and penalty provisions of the Act.

The County contends that while public facilities should be held to the same "standards" as private facilities, the methods of *enforcing* those

standards should be different for public facilities. Hence, the County argues, the statutory penalties are not necessary in order to maintain a high standard of nursing home care, as various alternative enforcement mechanisms are available. Specifically, the County again points to private actions for injunctions and civil damages. (§ 1430, subd. (a).)[7] As previously noted, section 1430, subdivision (a) permits the Attorney General or private parties to sue for injunctive relief and civil damages. The amount of civil damages recoverable under section 1430 cannot exceed the maximum amount of civil penalties that could be assessed pursuant to section 1428. (§ 1430, subd. (a).)

The County argues that the section 1430, subdivision (a) remedy is in the nature of "compensatory" civil damages and that the section 1428 statutory civil penalties are "punitive damages." The County concedes that the section 1430 civil damages "are not subject to the proscription of Government Code section 818." It argues that the section 1430 remedy is an "alternative" remedy available to the Department and that, by providing this "alternative," the Legislature gave the Department the authority to choose between "compensatory" and "punitive" means of enforcement. The County concludes that in this case the Department has chosen to pursue the punitive route and that this is not a legally viable option when a public entity is involved.

As the County admits, section 1430, subdivision (a) civil damages are based on the same standards under which a section 1428 civil penalty would be assessed. Nevertheless, the County argues that the moneys are recoverable under section 1430 because they are "civil damages" and unrecoverable in a section 1428 action because the County is immune from "punitive damages." We disagree. Section 1430, subdivision (a) merely provides a private right of action to the Attorney General or other interested parties to enforce certain provisions of the Act when the Department has failed to do so. Subdivision (a) of section 1430 only applies to class A or B violations and does not apply when the Department has taken action and the violations have been corrected to the Department's satisfaction. Contrary to the

---

[7]Section 1430, subdivision (a) states:

"(a) Except where the state department has taken action and the violations have been corrected to its satisfaction, any licensee who commits a class 'A' or 'B' violation may be enjoined from permitting the violation to continue or may be sued for civil damages within a court of competent jurisdiction. Such actions for injunction or civil damages, or both, may be prosecuted by the Attorney General in the name of the people of the State of California upon his or her own complaint or upon the complaint of any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public. The amount of civil damages which may be recovered in an action brought pursuant to this section shall not exceed the maximum amount of civil penalties which could be assessed on account of the violation or violations."

County's assertion, subdivision (a) of section 1430 does not offer the Department a fully adequate and effective alternate compensatory remedy.

The County has also suggested that consumer protection statutes designed to inform consumers of a facility's citation record (see §§ 1429, 1430.5, 1435, 1435.5), license revocation statutes (§ 1294 et seq.), and "the threat of personal injury lawsuits" are alternative enforcement mechanisms sufficient to ensure compliance. However, these alternative enforcement mechanisms do not vitiate the need for the statutory penalties. As the Court of Appeal noted, the threat of adverse publicity can have little impact on a facility such as the County's, whose patients are "apt to be poor and without many options in their choice of facility." A license revocation is a draconian sanction to ensure compliance with the regulations.

To suggest, as does the County, that individual patients assume responsibility for enforcement of the Act by way of a "threat of personal injury lawsuits" (see § 1430, subd. (c)) is to abrogate the most basic and traditional police power of the state—the oversight of public health and safety. The County's proposed alternatives to the civil penalties would shift the burden of enforcement to those who are most in need of adequate state enforcement, the nursing care patients themselves, who are already disabled by age and infirmity and additionally handicapped by their poverty. Relying on the threat of a personal injury lawsuit to impose compliance with health and safety regulations defeats the very purpose of the statutory scheme, i.e., *preventing* injury from occurring. As the Court of Appeal correctly recognized, "[b]ecause these patients are 'at the mercy of the facility,' the inspection, citation, and penalty system established by the Legislature is necessary to assure that they receive quality care." (Citing *Lackner* v. *St. Joseph Convalescent Hospital, Inc., supra*, 106 Cal.App.3d 542, 556; *Beach* v. *Western Medical Enterprises, Inc.* (1981) 116 Cal.App.3d 153, 161 [171 Cal.Rptr. 846].)

We agree with the Court of Appeal that, "[g]iven the unquestionable importance of this legislative purpose [assuring a uniform standard of quality health care], we perceive no significant public policy reason to exempt a state licensed health-care facility from liability for penalties under the Act simply because it is operated by a public rather than a private entity, even though it is the taxpayer who ultimately bears the burden when such penalties are imposed on a publicly owned facility. The citation and penalty provisions of the Act serve to encourage compliance with state mandated standards for patient care and to deter conduct which may endanger the well-being of patients. City councils and county boards of supervisors are as likely as private entities to heed the threat of monetary sanctions and make certain that their facilities are operated in compliance with the law. While it

is true that all facilities, including those which are publicly owned, may be subject to the loss of license for repeated violations, that draconian sanction should not be the only real tool available to the Department to foster regulatory compliance by a publicly operated facility."

We conclude that Government Code section 818 does not prevent the state from imposing the statutory civil penalties in the Long-Term Care, Health, Safety, and Security Act of 1973 on a state-licensed, county-operated, long-term health care facility.

We reverse the judgment of the Court of Appeal with directions to remand to the trial court with directions to vacate its order dismissing the action and to issue an order overruling the demurrer.

Lucas, C. J., Mosk, J., Broussard, J., Kennard, J., Arabian, J., and Baxter, J., concurred.