# IN THE SUPREME COURT OF CALIFORNIA

LOS ANGELES UNIFIED SCHOOL DISTRICT,
Petitioner,

v.

THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;

JANE DOE,
Real Party in Interest.

S269608

Second Appellate District, Division Three
B307389

Los Angeles County Superior Court
BC659059

June 1, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

LOS ANGELES UNIFIED SCHOOL DISTRICT v.
SUPERIOR COURT
S269608


Opinion of the Court by Guerrero, C. J.


Some statutory schemes provide for the recovery of treble damages, meaning that actual compensatory damages awarded to a prevailing plaintiff are multiplied by three. Here we consider a statute that, as recently amended by the Legislature, provides for up to treble damages when a plaintiff suing in tort for childhood sexual assault proves that the assault "was as the result of a cover up" (Code Civ. Proc., § 340.1, subd. (b)(1) (hereinafter sometimes referred to as section 340.1(b)(1))) by the defendant, with a " 'cover up' " being defined as "a concerted effort to hide evidence relating to childhood sexual assault" (*id.*, subd. (b)(2)). The specific issue before us is whether enhanced damages can be awarded under section 340.1(b)(1) against a public entity named as a defendant in a lawsuit for childhood sexual assault, or whether such awards are prohibited under Government Code section 818 (hereinafter sometimes referred to as section 818), a provision within the Government Claims Act (Gov. Code, § 810 et seq.), which specifies in relevant part that a public entity may not be held liable in tort for "damages imposed primarily for the sake of example and by way of punishing the defendant." (§ 818.)

The Court of Appeal below determined that section 818 shields public entities from liability for enhanced damages under section 340.1(b)(1). Based on our review of both

1

provisions, we agree with the Court of Appeal. We therefore affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the first amended complaint (hereinafter, complaint) and are assumed true in light of this case's procedural posture. (See *Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 63.)

Real party in interest and plaintiff below Jane Doe (hereinafter, plaintiff) was a student at Daniel Pearl Magnet High School, operated by petitioner and defendant below Los Angeles Unified School District (the District). Daniel Garcia was an employee at the school when plaintiff enrolled in the ninth grade for the 2014–2015 academic year. Garcia began to give special attention to plaintiff. He acted affectionately toward her at school, rubbing her legs and holding her hand. Garcia also sent plaintiff flirtatious and sexual text messages.[1] In November 2014, Garcia sexually assaulted plaintiff. Plaintiff later told her parents about Garcia's actions. Her parents immediately contacted the police. In May 2016, Garcia was arrested and charged with criminal offenses associated with his misconduct.

---

[1] The complaint also describes Garcia's improper conduct toward other female students at Jane Doe's high school, including an allegation that a student complained to the school's administration that Garcia had inappropriately touched her. Despite this misbehavior, the complaint alleges, Garcia was allowed to remain employed at the school, and "to continue his grooming conduct directed at Plaintiff, and . . . to sexually abuse her."

Before these events occurred, the District had learned in February 2014 that Garcia — who at the time worked as an aide at a different school — was involved in a "boyfriend-girlfriend" relationship with another female student, H.M. According to the complaint, this relationship began while Garcia was employed by the District. The District did not fire Garcia upon learning of this relationship, but instead transferred him to the high school where he would encounter plaintiff. The District also created a false report stating that Garcia and H.M. had met and dated before Garcia's employment with the District commenced. The complaint alleges that this falsehood represented "an effort to cover-up Garcia's prior sexual assault of minor female students within the" District and resulted in the sexual assault of plaintiff later that same year.

Plaintiff's complaint asserts claims for sexual abuse, intentional infliction of emotional distress, and sexual harassment against Garcia. Against the District, plaintiff advances various negligence theories and a claim for failing to report suspected child abuse. In addition to economic and noneconomic damages, plaintiff seeks punitive and exemplary damages from Garcia and an award of up to treble damages under section 340.1(b)(1) from the District.

The District brought a motion to strike the portions of the complaint reciting allegations of a cover up, as well as the request for up to treble damages. The District argued that the allegations and request should be stricken pursuant to section 818. The superior court denied the motion. It concluded from the legislative history before it that section 340.1(b)(1)'s treble damages provision was intended to be compensatory, not punitive.

The District then sought writ relief from the Court of Appeal. After issuing an order to show cause, the Court of Appeal granted the writ petition and directed the trial court to enter an order granting the District's motion to strike the treble damages request and related allegations. (*Los Angeles Unified School Dist. v. Superior Court* (2021) 64 Cal.App.5th 549, 567 (*Los Angeles Unified School Dist.*).)

In granting the petition, the Court of Appeal determined that section 818 protects public entities from the imposition of enhanced damages under section 340.1(b)(1). The Court of Appeal reasoned that because plaintiffs suing for childhood sexual assault should receive full compensation for their injuries in any event should they prevail at trial, the additional damages authorized under section 340.1(b)(1) are primarily punitive and thus cannot be assessed against a public entity. (*Los Angeles Unified School Dist.*, *supra*, 64 Cal.App.5th at pp. 561–562.) According to the Court of Appeal, plaintiff had not articulated "any injury from a childhood sexual assault or coverup for which normal tort damages fail to provide full compensation" (*id.* at p. 561), and the court itself had not identified any harm that might be uncompensated or undercompensated without a damages enhancement (*ibid.*). As for any other nonpunitive purpose that might exist, the Court of Appeal rejected the notion that the treble damages provision could be characterized as nonpunitive because the possibility of enhanced damages might incentivize lawsuits by victims of childhood sexual assaults. (*Id.* at p. 566.) Summing up, the Court of Appeal explained that "The treble damages provision in [Code of Civil Procedure] section 340.1 does not have a compensatory function; its primary purpose is to punish past childhood sexual abuse coverups to deter future ones. While this is a worthy public policy objective,

it is not one for which the state has waived sovereign immunity under the Government Claims Act." (*Id*. at p. 567.)

We granted review. Since that time, other Courts of Appeal also have determined that enhanced damages under section 340.1(b)(1) are not recoverable against public entities. The appellate court in *X.M. v. Superior Court* (2021) 68 Cal.App.5th 1014, review granted December 1, 2021, S271478 (*X.M.*) opined that "[i]t is the rare treble damages provision that isn't primarily designed to punish and deter misconduct" (*id*. at pp. 1019–1020) and "treble damages will be considered punitive when they apply to intentional misconduct or morally offensive behavior, and the Legislature has not clearly indicated an additional, compensatory purpose" (*id*. at p. 1024). Regarding section 340.1(b)(1) specifically, the court concluded that "the primary purpose of section 340.1's treble damages provision is punitive because it was designed to deter future cover ups by punishing past ones," with "the economic and noneconomic damages available under general tort principles . . . already [being] designed to make childhood sexual assault victims whole — both for the physical and emotional harm from the abuse itself, as well as for any additional emotional harm from learning the abuse was the result of a cover up." (*X.M.*, at p. 1019.) The court in *X.M.* regarded section 818 as foreclosing application of section 340.1(b)(1) even if enhanced damages might confer additional compensation upon victims of childhood sexual assault or provide an incentive for these individuals to bring lawsuits. (*X.M.*, at pp. 1026–1030.) Despite such possibilities, the court determined, "nothing in [Code of Civil Procedure] section 340.1 or its legislative history convinces us the Legislature intended the

increased award to be more compensatory (or incentivizing) than deterrent." (*Id.* at p. 1020; see also *id.* at pp. 1027, 1030.)

Even more recently, the court in *K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717 also concluded that section 818 precludes the application of section 340.1(b)(1) to public entities. (*K.M.*, at p. 742.) The *K.M.* court's reasoning generally aligned with that of the *X.M.* court and the Court of Appeal below. (*Id.* at pp. 742–750.)

## II. DISCUSSION

In deciding the issue before us, we first examine the language of and rationales behind Government Code section 818, as well as our case law applying this provision. We then turn to section 340.1(b)(1) and consider whether section 818 prohibits an award of enhanced damages under this provision against a public entity, and we conclude that the answer is yes.

### A. Government Code Section 818

Our first task is to identify the kinds of damages awards to which section 818 applies. Plaintiff argues that this provision prohibits only the imposition of damages that are "simply and solely punitive." (*People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 39 (*Younger*).) We conclude that section 818 is not so limited, and instead immunizes public entities from damages awarded under Civil Code section 3294 and from other damages that would function, in essence, as an award of punitive or exemplary damages.

### 1. *Statutory Language and Purpose*

Government Code section 818 provides, in full, as follows: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil

Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."[2]

To ascertain this provision's reach, we follow our well-established principles of statutory interpretation. " ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856–857.)

---

[2]     Civil Code section 3294, subdivision (a) provides, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

Government Code section 818 clearly shields public entities from punitive damages, which are also sometimes referred to as exemplary damages. Punitive damages are distinct from compensatory damages. While compensatory damages " 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct,' " punitive damages " 'operate as "private fines" intended to punish the defendant and to deter future wrongdoing.' " (*Nickerson v. Stonebridge Life Ins. Co.* (2016) 63 Cal.4th 363, 371; see also *State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 416 [differentiating between compensatory damages and punitive damages].) The California Law Revision Commission comment to section 818 corroborates this reading of the statute, explaining that "[t]his section exempts public entities from liability for punitive or exemplary damages." (Cal. Law Revision Com. com., 32 pt. 1 West's Ann. Gov. Code (2012 ed.) foll. § 818, p. 322.)[3]

---

[3] In enacting this statute, the Legislature apparently recognized that although punitive and exemplary damages are "imposed primarily for the sake of example and by way of punishing the defendant" (§ 818), they also could be perceived as having additional, secondary functions. (Accord, *Hofer v. Lavender* (Tex. 1984) 679 S.W.2d 470, 474–475 [reviewing different purposes that courts have assigned to awards of punitive damages]; *Perry v. Melton* (W.Va. 1982) 299 S.E.2d 8, 12–13 [describing various interests served by punitive damages]; *Walker v. Sheldon* (N.Y. 1961) 179 N.E.2d 497, 498 [noting that the possibility of a punitive damages award "may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer"].) Although we had previously described punitive damages as being awarded "purely as

Yet section 818's plain language also establishes that its prohibition can extend to more than just what are conventionally referred to as "punitive damages." In providing that "a public entity is not liable for damages awarded under Section 3294 of the Civil Code *or other damages imposed primarily for the sake of example and by way of punishing the defendant*" (§ 818, italics added), the statute, with its focus on the practical operation of a damages provision, conveys that it also captures other kinds of damages when they function, in essence, as awards of punitive or exemplary damages.

This interpretation of section 818 comports with the history behind this provision and the role it plays within the statutory scheme. The majority rule in the United States long has been that public entities are not liable for punitive damages arising out of the acts or omissions of their employees, at least without a clear expression of contrary legislative intent. (See, e.g., *Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 259–261; Morris, *Punitive Damages in Tort Cases* (1931) 44 Harv. L.Rev. 1173, 1204.) This rule has been premised on various policy rationales, including a sense that "[t]he money in the [public] treasury is derived from the pockets of taxpayers who have comparatively little to say about the actual management of the [public] corporation's business. It is not likely that the political employee will be punished when the power of punishing him is in the hands of his political patron, because of the outcome of a damage suit against the city. Assessment of punitive damages against a city would probably impoverish the

---

punishment and by way of example" (*Gudarov v. Hadjieff* (1952) 38 Cal.2d 412, 417), the Legislature was free to incorporate a different understanding of these damages into section 818.

public treasury without serving the admonitory function." (*Punitive Damages in Tort Cases*, at p. 1204; see also *Newport*, at pp. 266–271 [detailing the policies that counsel against allowing punitive damages against municipalities]; *City of Sanger v. Superior Court* (1992) 8 Cal.App.4th 444, 450 ["Requiring . . . public entit[ies] to pay punitive damages would punish the very group imposition of punitive damages was intended to benefit"]; *City of Gary v. Falcone* (Ind.Ct.App. 1976) 348 N.E.2d 41, 42 [reciting explanations for the general rule that public entities are immune from punitive damages].) The disinclination to subject public entities to punitive and exemplary damages has extended to treble damages in circumstances where these damages are imbued with a sufficiently exemplary character. (See, e.g., *Hunt v. City of Boonville* (1877) 65 Mo. 620, 624–625; cf. *Newport*, at p. 261 [discussing *Hunt*].)[4]

We read section 818 as codifying this common law rule. The Government Claims Act as a whole reflects an awareness that although tort claims can draw from public coffers and may impose additional burdens on taxpayers, to the extent these awards are necessary to compensate plaintiffs with meritorious claims for their injuries, they simply reflect the loss-distributing function of tort law at work. (See Recommendation Relating to Sovereign Immunity, No. 1 — Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com.

---

[4] We note that "exemplary" damages are sometimes framed by statute as a multiple of actual damages incurred, whether the multiplier serves as a base (e.g., Civ. Code, §§ 891, subd. (a), 1695.7, 2945.6, subd. (a)), ceiling (e.g., *id.*, § 3426.3, subd. (c)), or amount (e.g., *id.*, § 3336.5, subd. (b)) of the "exemplary" damages that can be recovered.

Rep. (1963) pp. 810, 817.)  Section 818, however, manifests an appreciation that when additional impositions upon a public entity are "primarily for the sake of example and by way of punishing the defendant" (*ibid*.), they further drain the public fisc, create a liability that will be borne not by the immediate wrongdoers but by taxpayers, and may not effectively achieve the goals of retribution and deterrence — and for these reasons, such awards should not be permitted, at least without a clear indication by the Legislature that they may be imposed.  As the California Law Revision Commission explained in its report transmitting the proposed law to the Legislature, "Public entities should not be liable for punitive or exemplary damages. Such damages are imposed to punish a defendant for oppression, fraud, or malice.  They are inappropriate where a public entity is involved, since they would fall upon the innocent taxpayers." (Recommendation Relating to Sovereign Immunity, at p. 817; cf. *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1196, fn. 20 (*Wells*) [describing "the purpose behind the statutory ban on punitive damages against public entities" as "to protect their tax-funded revenues from legal judgments in amounts beyond those strictly necessary to recompense the injured party"]; accord, *Paulson v. County of De Kalb* (Ill.App.Ct. 1994) 644 N.E.2d 37, 40 [construing Illinois law as prohibiting the imposition of treble damages on a public entity].)[5]

---

[5]    Whether this court would agree or disagree with these policy arguments if presented to us as a matter of first impression is of no consequence; what matters here is that the Legislature apparently endorsed this reasoning when it enacted what is now known as the Government Claims Act.

### 2. *Case Law Construing Government Code Section 818*

Section 818 therefore conveys that a damages provision cannot be applied against a public entity if it functions, in essence, as an award of punitive or exemplary damages. Yet, except for its reference to Civil Code section 3294, the statute does not explain how punitive and exemplary damages are to be distinguished from other kinds of awards. Our case law interpreting Government Code section 818 provides insight into how the statute should be applied. We glean a series of helpful guidelines from our prior decisions in this area, which we discuss next.

In *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, we upheld the trial court's refusal to allow a public entity defendant sued in tort to introduce evidence that some of the plaintiff's medical bills had already been paid through insurance. (*Id.* at pp. 4–6.) Explaining why the trial court's ruling, which implicated what is known as the "collateral source" rule, was consistent with section 818, we regarded the principle allowing plaintiffs to recover in tort against a defendant notwithstanding a prior first-party insurance payout as having "several legitimate and fully justified compensatory functions." (*Helfend*, at p. 13.) Our decision in *Helfend* emphasized that "[t]he collateral source rule as applied here embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence." (*Id.* at pp. 9–10, fn. omitted.) We also reasoned that "[t]o permit the defendant to tell the jury that the plaintiff has been recompensed by a collateral source for his medical costs might irretrievably upset the complex, delicate, and somewhat indefinable calculations

12

which result in the normal jury verdict." (*Id*. at pp. 11–12.) Our decision further explained that given the likelihood of a contingency fee arrangement under which a plaintiff's recovery would be reduced by the amount owed to counsel, "[t]he collateral source rule partially serves to compensate for the attorney's share and does not actually render 'double recovery' for the plaintiff" (*id*. at p. 12); in this respect, the rule "partially provides a somewhat closer approximation to full compensation for his injuries" (*id*. at p. 13).

The next year, in *State Dept. of Corrections v. Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885 (*State Dept. of Corrections*), we considered the relationship between Government Code section 818 and Labor Code section 4553. The latter statute is part of the state workers' compensation scheme, "pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16.) Labor Code section 4553 provides that the amount recoverable as workers' compensation for an accident "shall be increased one-half, together with costs and expenses not to exceed two hundred fifty dollars ($250), where the employee is injured by reason of the serious and willful misconduct" of the employer. We explained in *State Dept. of Corrections* that Labor Code section 4553 "is designed to provide more nearly full compensation to an injured employee rather than to penalize an employer." (*State Dept. of Corrections*, at p. 889.) "Although an employer against whom an increased award is made under [Labor Code] section 4553 is penalized in the sense that he is required to pay a higher amount of compensation by reason of his serious and wilful misconduct than he would have been compelled to pay if his conduct were

less culpable," we observed, "the employee does not receive more than full compensation for his injuries. Thus the increased award is not a penalty in the sense of being designed primarily to punish the defendant rather than to more adequately compensate the plaintiff." (*Id.* at p. 890.)

Our subsequent decisions addressing section 818 also involved contextual assessments of the particular awards under review. In *Younger, supra,* 16 Cal.3d 30, an enforcement action brought by the state, we assumed that section 818 was implicated insofar as the action was brought against a public entity, but held that the statute did not preclude the imposition of penalties to be paid into the State Water Pollution Cleanup and Abatement Account (Wat. Code, § 13440) and dedicated to the remediation of the unquantifiable harms associated with oil spills. (*Younger,* at pp. 37–39.) We based this conclusion on our determinations that these penalties "operate to more fully compensate the people of this state and are not beyond an amount equivalent to the harm done." (*Id.* at pp. 38–39; see also *San Francisco Civil Service Assn. v. Superior Court* (1976) 16 Cal.3d 46, 50–51 (*San Francisco Civil Service Assn.*) [applying *Younger*'s reasoning in an action brought under § 13385 of the Wat. Code, also seeking civil penalties].)

*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139 (*Kizer*) similarly determined that section 818 did not prevent the state from seeking statutory penalties from a county-run health care facility in an enforcement action brought under the Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.). (*Kizer,* at pp. 145–146.) Whereas our decision in *Younger* had assumed that a Government Code section 818 inquiry was implicated, in *Kizer* we explained that section 818 was simply inapplicable to the sort of enforcement

action that was before us. Stressing that the Government Claims Act is concerned with liability for claims that involve an " 'injury' " (*Kizer*, at p. 145, quoting Gov. Code, § 810.8), we found "nothing in the . . . Act to suggest that . . . section 818 was intended to apply to statutory civil penalties designed to ensure compliance with a detailed regulatory scheme, . . . even though they may have a punitive effect." (*Kizer*, at p. 146.)

Having concluded that the Legislature did not intend for "the immunity created by Government Code section 818 to apply to statutory civil penalties expressly designed to enforce minimum health and safety standards" (*Kizer*, *supra*, 53 Cal.3d at p. 146), our opinion in *Kizer* then went on to explain why, in any event, the penalties sought in that case were not primarily punitive. In this portion of our decision, we stressed that unlike punitive damages, the penalties at issue did not require any showing of actual harm, were "imposed according to a range set by statute irrespective of actual damage suffered," could be imposed without a showing of malfeasance or state of mind commonly understood to be deserving of punishment, and were "to be applied to offset the state's costs in enforcing the health and safety regulations" involved. (*Id.* at p. 147.) We determined that "[w]hile the civil penalties may have a punitive or deterrent aspect, their primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives" (*id.* at pp. 147–148), which we described as an essentially "preventative" function (*id.* at p. 148, italics omitted).

These decisions, read together, establish that section 818 requires a fact-specific inquiry concerning the damages provision or principle being applied. Our cases also yield some guidance for this analysis. The statutory text and basic

objective characteristics of the award at issue provide a starting point. In some situations, as with an assessment of punitive damages under Civil Code section 3294, subdivision (a) at one extreme and the conventional imposition of actual compensatory damages at the other, it may easily be determined whether a particular award is or is not barred under Government Code section 818. When further inquiry is necessary, relevant considerations may include, without limitation, whether the damages involved go beyond those necessary to fully compensate the plaintiff (*State Dept. of Corrections*, *supra*, 5 Cal.3d at p. 890); whether a damages remedy functions to offset some otherwise applicable restriction on compensatory damages (*id.* at pp. 888–890); whether the challenged form of damages is conditioned on morally culpable conduct, beyond mere negligence (*Kizer*, *supra*, 53 Cal.3d at p. 147); whether there is an element of discretion by the fact finder in the award of damages (*ibid.*); and whether in the normal course actual damages are likely to be difficult to establish or quantify (*Younger*, *supra*, 16 Cal.3d at p. 37). Whenever this inquiry occurs, the ultimate question remains whether, by virtue of being imposed "primarily for the sake of example and by way of punishing the defendant" (§ 818), the damages before the court function, in essence, as a form of punitive or exemplary damages.

### 3. *Government Code Section 818 Cannot Reasonably Be Construed as Concerned Only with Damages That Are "Simply and Solely" Punitive*

In arguing that section 818 applies only to damages provisions that are simply or solely punitive, plaintiff relies on language appearing in *Younger*, *San Francisco Civil Service Assn.*, and *Kizer*. As explained below, although plaintiff's

reliance on these decisions is understandable, we conclude that the phrasing plaintiff focuses upon mischaracterizes the section 818 inquiry.  We further conclude that these decisions therefore must be overruled insofar as they articulate a standard whereby the section 818 inquiry hinges on whether a damages provision is deemed solely punitive in nature.

Our analysis in *Younger*, *supra*, 16 Cal.3d 30 began with the general observation that "[d]amages which are punitive in nature, but not 'simply' or solely punitive in that they fulfill 'legitimate and fully justified compensatory functions,' have been held *not* to be punitive damages within the meaning of section 818 of the Government Code." (*Id.* at pp. 35–36.)  We ultimately concluded "that the civil penalties imposed pursuant to [Water Code section 13350] *are not simply and solely punitive in nature but fulfill legitimate compensatory functions* and are not punitive damages within the meaning of Government Code section 818 so as to preclude the recovery of such moneys against public entities." (*Id.* at p. 39, italics added.)  In a footnote, *Younger* distinguished a federal district court decision, *People ex rel. Cal. Reg. W. Q. C. Bd. v. Department of Navy* (N.D.Cal. 1973) 371 F.Supp. 82, by stating that the applicable federal standard at that time, "unlike the California standard set forth in *Helfend* and *State Dept. of Corrections* which provides immunity only if the damages are simply punitive, grants immunity to the federal government for damages 'which do not merely compensate' [citation], or where the 'impact of [the] section is more punitive than compensatory.' " (*Younger*, at p. 37, fn. 4.)  We explained that "[s]ince the federal standard for ascertaining punitive damages for federal government immunity purposes varies so significantly from the California standard," under which "*the critical question is whether* [*the penalty*] *is simply,*

*that is solely, punitive,*" the federal decision was inapposite. (*Ibid.*, italics added.)

Relying on *Younger*, our decision in *San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d 46 described the section 818 analysis as turning on whether the penalties addressed by that court were "simply and solely punitive in nature or fulfill compensatory functions so as to remove them from the class of punitive damages covered by section 818 of the Government Code." (*San Francisco Civil Service Assn.*, at p. 50.) *Kizer*, meanwhile, described the *Younger* approach as concerned with whether damages "are not simply or solely punitive in that they fulfill legitimate and fully justified compensatory functions." (*Kizer*, *supra*, 53 Cal.3d at p. 145.)

Plaintiff reads *Younger*, *San Francisco Civil Service Assn.*, and *Kizer* as firmly establishing that only damages that are "simply and solely punitive" (*San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d at p. 50; *Younger*, *supra*, 16 Cal.3d at p. 39) or "simply or solely punitive" (*Kizer*, *supra*, 53 Cal.3d at p. 145) run afoul of section 818, and that a damages award that could operate to incentivize lawsuits, offset or provide redress for otherwise uncompensated harms or expenditures, or advance some other policy goal does not meet this standard. As plaintiff puts it, "damages which are punitive in nature but also aim to more fully compensate the victim or encourage victims to bring civil actions or otherwise achieve a non-punitive public policy objective are *not* solely punitive and thus fall outside of the ambit of Government Code section 818."

There are multiple problems with this interpretation of the statute. Among them, it collides headlong with the text of section 818 providing that "a public entity is not liable for

18

damages awarded under Section 3294 of the Civil Code or other damages imposed *primarily* for the sake of example and by way of punishing the defendant." (Italics added.) "Primarily" (*ibid.*) on the one hand, and "simply and solely" (*San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d at p. 50; *Younger*, *supra*, 16 Cal.3d at p. 39) or "simply or solely" (*Kizer*, *supra*, 53 Cal.3d at p. 145) on the other, carry substantially different meanings, and the Legislature's use of the former term within section 818 communicates that the statute extends to damages that may have secondary functions beyond punishment and the setting of an example.

Indeed, *no* form of damages — not even punitive damages awarded under Civil Code section 3294 — would qualify as "simply and solely punitive" (*San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d at p. 50; *Younger*, *supra*, 16 Cal.3d at p. 39) or "simply or solely punitive" (*Kizer*, *supra*, 53 Cal.3d at p. 145) under the standard plaintiff asks us to endorse. Some kind of assertedly nonpunitive function can always be hypothesized for any award of damages, whether it be the incentivization of lawsuits by holding out the prospect of a larger return, the recovery of expenditures on attorney fees or litigation expenses, or something else. The language of section 818 appears to recognize the possibility that such secondary functions might be assigned even to conventional punitive damages. To stay true to the Legislature's intent, then, the standard announced in *Younger*, *San Francisco Civil Service Assn.*, and *Kizer* cannot supply the test for applying section 818. A contrary approach would artificially and drastically limit this section's applicability in a manner inconsistent with its language and evident purpose.

The decisions upon which plaintiff relies also include express qualifications that damages will not be regarded as simply or solely punitive when they "fulfill compensatory functions" (*San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d at p. 50) or "they fulfill legitimate and fully justified compensatory functions" (*Kizer*, *supra*, 53 Cal.3d at p. 145; see also *Younger*, *supra*, 16 Cal.3d at pp. 35–36). Charitably read, these qualifications could bring the standards articulated in *Younger*, *San Francisco Civil Service Assn.*, and *Kizer* closer to conformity with section 818. On balance, however, we find it necessary to foreclose future invocation of language so clearly at odds with that of the statute it purports to apply. We therefore overrule *People ex rel. Younger v. Superior Court*, *supra*, 16 Cal.3d 30; *San Francisco Civil Service Assn. v. Superior Court*, *supra*, 16 Cal.3d 46; and *Kizer v. County of San Mateo*, *supra*, 53 Cal.3d 139 insofar as these decisions articulate a standard whereby the section 818 inquiry hinges on whether a damages provision is deemed simply and solely, or simply or solely, punitive. To repeat, the test under section 818 is whether damages would be awarded under Civil Code section 3294, or would otherwise be "imposed primarily for the sake of example and by way of punishing the defendant" (Gov. Code, § 818) such that they would function, in essence, as punitive or exemplary damages.[6]

---

[6] In concluding that the state's Uninsured Employers Fund (UEF) was not liable for penalties under Labor Code section 5814 for unreasonable delay in the payment of workers' compensation, our decision in *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382 referenced Government Code section 818 and explained that "[i]n light of the partially penal

Plaintiff's other arguments in favor of a narrow reading of section 818 fare no better. She argues that our construction of this section should be informed by the United States Supreme Court's interpretation of language within the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) providing that the federal government is not liable for "punitive damages" (*id.*, § 2674). The high court has construed this term as it appears within the Federal Tort Claims Act as bearing its "widely accepted common-law meaning" — and not as connoting " 'damages awards that may have a punitive effect.' " (*Molzof v. United States* (1992) 502 U.S. 301, 306.) Plaintiff also argues that textual clues within section 818 and elsewhere in the Government Claims Act convey the Legislature's intent to prohibit only a limited array of damages. Specifically, plaintiff assigns significance to section 818's repetition of the "for the sake of example and by way of punishing the defendant" language appearing in Civil Code section 3294, subdivision (a), and to a reference within Government Code section 825, part of the Government Claims Act that is concerned with the payment

_____

nature of [Labor Code] section 5814, we believe that application of the statutory penalty provision to the UEF is not permitted, absent express legislative authorization." (*DuBois*, at p. 398.) At oral argument, counsel for the District asserted that this discussion in *DuBois* manifested an understanding regarding Government Code section 818's purview, i.e., that section 818 applies to damages awards that are at least partially penal. It is not clear whether this passage in *DuBois*, read in context, carries this implication. In any event, our decision today makes clear the standard for determining whether section 818 precludes the imposition of damages upon a public entity is whether the award would function, in essence, as an award of punitive or exemplary damages, and we reject any contrary approach.

of judgments, that describes section 818 as concerned with "punitive damages." (Gov. Code, § 825, subd. (e).)

These arguments do not persuade us to interpret section 818 as applicable to only a subset of the damages awards captured by its language and rationale. Whatever the scope of the Federal Tort Claims Act's prohibition on punitive damages may be — an issue we need not delve into here — it is the language of section 818, read in context, and not the federal statute that provides the touchstone for our analysis. Likewise, the evident import of section 818 is not altered by the fact that it incorporates certain language from Civil Code section 3294, subdivision (a), or that another provision within the Government Claims Act describes Government Code section 818 as applicable to "punitive damages." (Gov. Code, § 825, subd. (e).) This borrowing and reference are consistent with our interpretation of section 818, and do not convey a legislative intent that this section should be interpreted in a manner that would be inconsistent with its plain language and fail to fully vindicate its apparent goals.

## B. Code of Civil Procedure Section 340.1

Having determined that in enacting Government Code section 818 the Legislature intended to shield public entities from damages under Civil Code section 3294 and damages that function, in essence, as punitive or exemplary damages, we now apply this standard to Code of Civil Procedure section 340.1(b)(1).

1. *The Enhanced Damages Authorized by
Section 340.1(b)(1) Amount to Punitive Damages for
Purposes of Section 818*

Code of Civil Procedure Section 340.1 is, for the most part, a statute of limitations. We have described "the intent that illuminates section 340.1 as a whole" as an aim "to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 536.) Since its original enactment in 1986 (Stats. 1986, ch. 914, § 1, pp. 3165–3166), the statute has been amended on multiple occasions to extend the filing periods for claims alleging childhood sexual assault and revive otherwise time-barred claims.

One such amendment occurred through the enactment of Assembly Bill No. 218 (2019–2020 Reg. Sess.) (Assembly Bill No. 218) in 2019. (Stats. 2019, ch. 861, § 1.) This revision made several changes to Code of Civil Procedure section 340.1. Among these adjustments, Assembly Bill No. 218 extended the time for filing claims for childhood sexual assault (Code Civ. Proc., § 340.1, subds. (a), (c)) and created a revival window for lapsed claims (*id.*, subd. (q)), which included relief from the claim presentation deadlines within the Government Claims Act. (Gov. Code, § 905 et seq.) The 2019 amendment also revised section 340.1(b)(1) to provide that in an action seeking damages suffered due to childhood sexual assault, "a person who is sexually assaulted and proves it was as the result of a cover up may recover up to treble damages against a defendant who is found to have covered up the sexual assault of a minor, unless prohibited by another law." (*Ibid.*, as amended by Stats. 2019, ch. 861, § 1.)

Our application of section 818 to section 340.1(b)(1) begins with the obvious fact that the latter statute provides for an award of up to treble damages. While not dispositive, the fact that it is a treble damages provision before us is nonetheless significant. This court and others have frequently characterized treble damages as exemplary or punitive. (*Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1108 ["Many states, including California, 'provide[d] for exemplary damages in the form of double or treble damages, or penalties, for the unlawful cutting of timber on the land of another or on public land' "]; *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 394 ["Treble damages are punitive in nature"]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1172 [describing the treble damages authorized by Civ. Code, § 52, subd. (a) for a denial of civil rights as "an exemplary award" that "reveals a desire to punish intentional and morally offensive conduct"]; *Circle Oaks Sales Co. v. Smith* (1971) 16 Cal.App.3d 682, 684–685 ["a treble damages award is punitive in nature, imposed as punishment against the defendant, rather than compensation to the plaintiff"].) In adding the treble damages provision to section 340.1 of the Code of Civil Procedure, the Legislature presumably was aware of our prior decisions so characterizing treble damages and understood that the provision could be perceived similarly. (See *Harris*, at p. 1155 [courts "generally presume the Legislature is aware of appellate court decisions"].) Moreover, in authorizing damages that, by definition, may go well beyond those necessary to provide full compensation for a plaintiff's legally recoverable actual damages, treble damages provisions such as the one before us implicate a central concern behind section 818: the protection of "tax-funded revenues from legal judgments in amounts beyond those strictly necessary to

recompense the injured party." (*Wells*, *supra*, 39 Cal.4th at p. 1196, fn. 20.)

Yet we have also suggested that treble damages may serve nonpunitive purposes, as well. (See, e.g., *Miller v. Municipal Court* (1943) 22 Cal.2d 818, 839 [favorably referencing case law that described a treble damages provision within a federal statute as having a remedial component].) Similarly, other courts have determined that particular treble damages provisions, understood in their respective statutory contexts, possess an essentially remedial or otherwise nonpunitive character. (See, e.g., *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* (1977) 429 U.S. 477, 486 [explaining that § 4(a) of the Clayton Act (15 U.S.C. § 15(a)) "is designed primarily as a remedy"].) Therefore, the fact that we are concerned here with a treble damages provision, though significant, is not conclusive on the characterization question. (Accord, *Alea London Ltd. v. American Home Services, Inc.* (11th Cir. 2011) 638 F.3d 768, 777 (*Alea London Ltd.*) ["Whether treble damages under a given statute are considered compensatory or punitive is an intensely fact-based inquiry that may vary statute-to-statute"]; see also *PacifiCare Health Systems, Inc. v. Book* (2003) 538 U.S. 401, 405 [noting that the high court's precedents "have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards"]; *Cook County v. United States ex rel. Chandler* (2003) 538 U.S. 119, 130 [observing that with treble damages provisions, "the tipping point between payback and punishment

defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation"].)[7]

Therefore, we undertake a closer examination of section 340.1(b)(1). In doing so, we assign some significance to the fact that section 340.1(b)(1) provides for up to treble damages "unless prohibited by another law." This caveat is reasonably read as having section 818 in mind. Plaintiff has not identified any law other than section 818 that this language plausibly might be referring to, and even if there is such a statute, section 818 is clearly "another law" that could function

---

[7]     Courts have wrestled with the categorization of treble damages in a variety of situations. Classification issues have arisen not only when a public entity claims immunity from treble damages on the ground that they are tantamount to punitive damages, but also in other contexts, including when it is claimed that allowing both treble damages and punitive damages would amount to an impermissible double recovery (e.g., *Marshall v. Brown* (1983) 141 Cal.App.3d 408, 419); that a reference to punitive or exemplary damages in an agreement implicitly includes treble damages (e.g., *Alea London Ltd.*, *supra*, 638 F.3d at pp. 776–777); or that treble damages require the same malice or malfeasance that is demanded for an award of punitive damages (e.g., *District Cablevision Ltd. v. Bassin* (D.C. 2003) 828 A.2d 714, 727).

    In each of these scenarios, the classification analysis has been framed by the statutory scheme or common law principles involved and the precise legal issue presented. The outcome of these inquiries may depend on whether a provision is regarded as entirely, primarily, or only partially punitive in nature. These subtleties make it conceivable that a particular treble damages remedy will be regarded as sufficiently punitive to trigger some consequence, but not so thoroughly punitive as to bring about another.

to prohibit damages under section 340.1(b)(1) in an appropriate case. Although this language within section 340.1(b)(1) stops short of expressly stating that enhanced damages under the statute cannot be imposed against a public entity, at the very least, it cuts against any assertion that the Legislature affirmatively sought to avoid a section 818 analysis.

Next, the damages authorized under section 340.1(b)(1) have substantial punitive qualities beyond the simple fact that they may go well beyond actual damages. These objective characteristics confirm that enhanced damages under the statute function, in essence, as punitive or exemplary damages by serving "to punish past childhood sexual abuse coverups to deter future ones." (*Los Angeles Unified School Dist.*, *supra*, 64 Cal.App.5th at p. 567; see also *Adams v. Murakami* (1991) 54 Cal.3d 105, 110 ["the quintessence of punitive damages is to deter future misconduct by the defendant"].)

Several of the pertinent features of the damages available under section 340.1(b)(1) were described by the court in *X.M.*, *supra*, 68 Cal.App.5th 1014, review granted. In determining that section 818 prohibited the imposition of enhanced damages under section 340.1(b)(1) against a public entity, the *X.M.* court observed, "First, the statute authorizes treble damages only upon proof of morally offensive behavior on behalf of the defendant. A plaintiff receives actual (that is, economic and noneconomic) damages if they prove they were the victim of childhood sexual assault. But the statute authorizes an award of three times their actual damages if they can also prove their assault was the result of the defendant's cover up of a previous sexual assault of a child. [Citation.] Second, even if the plaintiff presents the requisite proof, the decision to increase the damage award beyond actual damages lies entirely with the fact finder.

And third, if the fact finder does decide to increase the damage award, the amount by which it does so, though capped, is not fixed. As a result, the fact finder is free to increase the damage award up to three times the plaintiff's actual damages based on factors specific to the defendant." (*X.M.*, at p. 1026.) The features described by the *X.M.* court are important insofar as they convey that the assessment of enhanced damages under section 340.1(b)(1) will commonly resemble the imposition of punitive damages, with the blameworthiness of a defendant's conduct and the need for punishment and example-setting informing the amount of a discretionary damages award that is additional to an award of actual damages.

In short, the enhanced damages authorized under section 340.1(b)(1) are recognizable as punitive or exemplary damages for purposes of a section 818 analysis as a matter of both substance and procedure. These awards require the existence of actual injury, but may go substantially beyond the amounts necessary to fully compensate plaintiffs for the injuries they have suffered; they are premised on morally culpable behavior by defendants, namely, participation in "a concerted effort to hide evidence relating to childhood sexual assault" (Code Civ. Proc., § 340.1, subd. (b)(2)); and they are assessed on a case- and fact-specific manner in much the same way that punitive damages are, albeit being subject to a cap. With their punitive and exemplary character having been shown, we now consider whether damages under section 340.1(b)(1) are nonetheless sufficiently distinguishable from punitive damages as to fall outside the scope of section 818.

## 2. *No Nonpunitive Characteristic or Function Sufficiently Distinguishes Damages Under Code of Civil Procedure Section 340.1(b)(1) from Punitive Damages*

Plaintiff offers several reasons why section 340.1(b)(1) should be regarded as applicable to public entities. Some of her arguments essentially assert that in adopting this enhanced damages provision, the Legislature did not intend for a section 818 analysis to apply at all. Her other contentions assume that such an analysis applies, but characterize damages under section 340.1(b)(1) as sufficiently nonpunitive in nature that they may be imposed upon a public entity. We conclude that all of these arguments are unpersuasive.

First, plaintiff argues that cover ups occurring in schools featured so prominently in legislative dialogue concerning Assembly Bill No. 218 that it would be nonsensical to regard section 340.1(b)(1) as inapplicable to public entities such as school districts. But the legislative history materials manifest a concern with childhood sexual assaults occurring not only at public schools, but also at private schools, sporting leagues and organizations, religious institutions, and wherever else they may occur. (See, e.g., Assem. 3d reading analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Mar. 25, 2019, pp. 1, 2; Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as introduced Jan. 16, 2019, pp. 1, 3, 4, 7.) A Senate analysis of Assembly Bill No. 218 referred to "the systematic incidence of childhood sexual assault in *numerous institutions* in this country and the cover-ups that accompanied them." (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Aug. 30, 2019, p. 5, italics added.) There being significant

cohorts of defendants that might be subject to treble damages for engaging in cover ups even if public entities are not, and with section 340.1(b)(1) providing on its face that enhanced damages are available "unless prohibited by another law," we cannot conclude that the Legislature intended to avoid a section 818 analysis altogether.[8]

Second, plaintiff contends that the treble damages provision within section 340.1(b)(1) must be construed as applicable to public entities, or else it would merely duplicate plaintiffs' existing right to pursue punitive damages against private defendants. Such an interpretation, plaintiff argues, would render the provision mere surplusage. (See *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 691 [courts aim to interpret statutes in a manner that avoids surplusage].) But our interpretation has no such effect. At a minimum, section 340.1(b)(1) establishes that enhanced damages may be awarded to plaintiffs who prove that they were the victims of sexual assaults that result from cover ups, regardless of whether these plaintiffs also specifically demonstrate the "oppression, fraud, or malice" that Civil Code section 3294, subdivision (a) requires for an award of punitive damages. And even if we were to assume for sake of argument that the evidence necessary to prove a cover up under Code of Civil Procedure section 340.1,

---

[8] Plaintiff also argues that a reference in section 340.1(b)(1) to claims authorized under Code of Civil Procedure section 340.1, subdivision (a) implies an intent to make public entities subject to treble damages, because subdivision (a) refers to actions "for liability against any person or entity." (*Id.*, § 340.1, subd. (a)(2), (3).) This argument fails to account for the significance of section 340.1(b)(1)'s "unless prohibited by another law" language.

subdivision (b)(1) and (2) is *always* sufficient to establish the "oppression, fraud, or malice" that must be shown by clear and convincing evidence under Civil Code section 3294, subdivision (a), "Legislatures are free to state legal principles in statutes, even if they repeat preexisting law, without fear the courts will find them unnecessary . . . ." (*Reno v. Baird* (1998) 18 Cal.4th 640, 658.) The enhanced damages provision is therefore not surplusage, even as applicable only to private entities.

Third, in arguing that the Legislature must have intended for the treble damages provision to apply to public entities, plaintiff observes that an analysis of Assembly Bill No. 218 that circulated after the "unless prohibited by another law" language was added to the proposed text of section 340.1(b)(1) by a bill amendment (Sen. Amend. to Assem. Bill No. 218 (2019–2020 Reg. Sess.) Aug. 30, 2019) explained that the measure "applies equally to abuse occurring at public and private schools and applies to all local public entities" (Assem. Conc. in Sen. Amends. to Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Aug. 30, 2019, p. 2). Plaintiff also notes that bill analyses published before and after this amendment included statements by a contingent of opponents, including but not limited to public entities, lamenting the treble damages provision's potential financial impact and seeking its removal. (E.g., *id.*, at pp. 2–3; Assem. 3d reading analysis of Assem. Bill No. 218, *supra*, as amended Mar. 25, 2019, p. 2; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 218 (2019–2020 Reg. Sess.) as amended Mar. 25, 2019, pp. 12–13.)

These snippets of legislative history carry little weight. The description of Assembly Bill No. 218 as equally applicable to public and private entities, read in context, appears directed

at the bill's statute of limitations and claim-revival provisions. Meanwhile, the views of the bill's opponents found in committee and floor analyses regarding this measure shed little light on the *Legislature's* intent, which is the focus of our analysis. (See *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1264 ["this restatement of an argument made by certain industry groups does not purport to reflect debate within the Legislature"]; *Purifoy v. Howell* (2010) 183 Cal.App.4th 166, 179, fn. 14 [describing a statement by an opponent of a bill as "not evidence of the Legislature's collective intent"]; accord, *Labor Board v. Fruit Packers* (1964) 377 U.S. 58, 66 [cautioning "against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents"].) Even when taken into consideration, the continued entreaties of opponents to remove the treble damages provision might have reflected a preference for the certainty that would come from having the treble damages provision deleted from the measure entirely (which would be of particularly clear benefit to the private entities that joined their public counterparts in lobbying against the bill), over the possibility that a court might later reject a claim of immunity under section 818 and find both public and private defendants subject to enhanced damages under section 340.1(b)(1).

Fourth, plaintiff argues that enhanced damages under section 340.1(b)(1) serve important nonpunitive functions that distinguish them from conventional punitive or exemplary damages. In particular, plaintiff hypothesizes that the damages authorized under this provision might compensate plaintiffs for the stress associated with pursuing a claim for childhood sexual assault in court, or incentivize claims for childhood sexual

assault that might not otherwise be expected to lead to substantial damages awards.

Plaintiff claims to find support for these rationales in the legislative history of Assembly Bill No. 218. She points to multiple analyses of this measure that quoted its author as stating, in relevant part, that Assembly Bill No. 218 "would also confront the pervasive problem of cover ups in institutions, from schools to sports league[s], which result in continuing victimization and the sexual assault of additional children. The bill would allow for recovery of up to treble damages from the defendant who covered up sexual assault. *This reform is clearly needed both to compensate victims who never should have been victims* — and would not have been if past sexual assault had been properly brought to light — and also as an effective deterrent against individuals and entities who have chosen to protect the perpetrators of sexual assault over the victims." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 4, italics added; see also Assem. Conc. in Sen. Amends. to Assem. Bill No. 218, *supra*, as amended Aug. 30, 2019, p. 2; Assem. 3d reading analysis of Assem. Bill No. 218, *supra*, as amended Mar. 25, 2019, p. 2.) Plaintiff also observes that legislators were made aware of instances in which schoolteachers engaged in a course of misconduct, some of which may not have led to substantial actual damages if it had become the subject of a lawsuit. The treble damages provision, she argues, could have been designed to address these scenarios, providing an inducement to present what otherwise might constitute low-value claims and by doing so, avoid future assaults.

We conclude that plaintiff fails to sufficiently distinguish the enhanced damages authorized under section 340.1(b)(1)

from punitive or exemplary damages. As a threshold matter, we discern that enhanced damages under section 340.1(b)(1) represent an awkward and somewhat ineffective way to achieve the functions plaintiff assigns to them. Because enhanced damages are available only when a sexual assault "was as the result of a cover up" (§ 340.1(b)(1)), they are available in only a subset of the cases identified by plaintiff, involving litigation-related trauma or low compensatory damages. What is more, unlike other facts relevant to a claim for childhood sexual assault, the existence of a prior cover up may be unknown to a prospective plaintiff until after a lawsuit is filed, blunting any incentivizing effect. These circumstances make it difficult to perceive any clear connection between the provision of enhanced damages for a sexual assault that results from a cover up and the policy goals that plaintiff assigns to these damages, casting doubt on whether section 340.1(b)(1) was designed to serve these ends.

In any event, nothing associated with section 340.1(b)(1) conveys that a nonpunitive purpose or purposes are sufficiently implicated here as to allow public entities to be held liable for enhanced damages under this provision.

We do not perceive any clear indication in the text of the statute or in its legislative history that legislators intended for enhanced damages under section 340.1(b)(1) to compensate plaintiffs suing for childhood sexual assault for litigation-related stress that would otherwise go unremedied. Regarding the more generic references to compensation in legislative analyses (e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 4) and the broader function of providing larger recoveries for prevailing plaintiffs, as the Court of Appeal below recognized (*Los Angeles*

*Unified School Dist.*, *supra*, 64 Cal.App.5th at pp. 561–562), conventional damages principles already provide for full compensation for victims of childhood sexual assault who prove their claims at trial.  With or without a cover up, individuals who establish that they were victimized by a childhood sexual assault are entitled to actual, compensatory damages in an "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."  (Civ. Code, § 3333; see also *id.*, § 3282 [defining "[d]etriment" as "a loss or harm suffered in person or property"].)  These damages may, as appropriate, include compensation for mental suffering.  "[I]t is settled in this state that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain."  (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433; see also *X.M.*, *supra*, 68 Cal.App.5th at p. 1028, review granted; *Los Angeles Unified School Dist.*, *supra*, 64 Cal.App.5th at p. 561.)  Enhanced damages are therefore not necessary here to fill an obvious gap or deficiency in compensation.

The legislative history materials that plaintiff draws from must be understood in this light.  With plaintiffs already being entitled to full compensation for their injuries, the assertions within the legislative analyses that additional damages under section 340.1(b)(1) would function to "compensate" some prevailing plaintiffs (e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 4) fail to sufficiently distinguish these awards from the assessment of punitive damages.  Such references could well have used "compensate" in the colloquial sense of providing plaintiffs with

greater monetary recoveries. But, as we have already explained, all damages — even punitive damages under Civil Code section 3294 — have that effect. If a bare acknowledgment of this fact by legislators considering a proposed law were enough to make section 818 inapplicable, the statute would be eviscerated.

Additionally, the significance of any references to compensation within legislative history materials is lessened by the fact that these same analyses also reveal an appreciation among legislators that the enhanced damages available under section 340.1(b)(1) would function to punish defendants who engage in cover ups. As excerpted above, analyses prepared during the Legislature's deliberations coupled mentions of the need to "compensate" victims of sexual assault with references to the essentially punitive deterrent effect that the imposition of enhanced damages would have. (E.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 4.) To similar effect, a committee analysis of Assembly Bill No. 218 explained that "[*t*]*he bill also exposes those who cover up the sexual abuse of children to additional punishment*. In addition to extending the statute of limitations for childhood sexual assault, reviving old claims, and removing the protections of the [Government Claims Act] from local public entities, this bill allows a victim of childhood sexual assault to recover tremble [*sic*] damages against a defendant if the victim's assault was the result of a cover-up by the defendant of a prior sexual assault of a minor." (Assem. Com. on Judiciary, Analysis

of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 9, boldface omitted.)[9]

Ultimately, we conclude that the legislative history of Assembly Bill No. 218 does not provide substantial support for plaintiff's view that the enhanced damages authorized under section 340.1(b)(1) are meaningfully distinguishable from punitive or exemplary damages on the ground that they recognize and provide redress for litigation-related trauma. This is not a situation where, in the words of the court in *X.M.*, *supra*, 68 Cal.App.5th 1014, review granted, the Legislature has "clearly indicated an additional, compensatory purpose" (*id.* at p. 1024) of sufficient magnitude that it would allow us to regard a treble damages provision as outside of section 818's purview.

There is also no clear indication in the text of section 340.1(b)(1), its practical application, or its legislative history that legislators sought to use the possibility of enhanced damages to incentivize the filing of claims that might involve relatively modest damages awards. We presume that such cases are possible; the statutory definition of " '[c]hildhood sexual assault' " (Code Civ. Proc., § 340.1, subd. (d)) captures a range of conduct. (Cf. *People v. Martinez* (1995) 11 Cal.4th 434, 442 [construing Pen. Code, § 288], 447 [discussing Court of Appeal

---

[9]     The reference within the above-quoted committee analysis to "removing the protections of the [Government Claims Act] from local public entities" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 218, *supra*, as introduced Jan. 16, 2019, p. 9), read in context, appears to refer to the bill's lifting of the act's claim-presentation deadline incident to the revival of lapsed claims (Code Civ. Proc., § 340.1, subd. (q)), and not to Government Code section 818.

decisions applying that statute].)   Still, the fact remains that childhood sexual assaults that implicate Code of Civil Procedure section 340.1 would not normally be expected to yield only minimal damages, and the fact that members of the Legislature may have been aware of counterexamples does not establish that these circumstances were a significant motive behind the treble damages provision.[10]

Even if we were to sum the various nonpunitive rationales advanced by plaintiff or otherwise capable of being hypothesized, and indulge the possibility that, in practice, the prospect of enhanced damages will have an incentivizing effect on some lawsuits and provide additional recoveries to plaintiffs that may offset litigation-related expenditures or contribute to their financial recoveries, that would not alter our conclusion. We remain convinced that the enhanced damages authorized under section 340.1(b)(1) are "imposed primarily for the sake of example and by way of punishing the defendant" (§ 818), and therefore are incapable of being imposed upon a public entity. As has been explained, the objective characteristics of these awards establish that they qualify as a form of punitive or exemplary damages for purposes of a section 818 analysis, and

---

[10]   In supplemental briefing filed shortly before oral argument, plaintiff asserted that a recent amendment (Stats. 2022, ch. 442, § 3) to Code of Civil Procedure section 340.16, which prescribes the statute of limitations for claims of sexual abuse suffered as an adult, and legislative history materials associated with this amendment provide additional indications of the nonpunitive intentions behind the 2019 revision of Code of Civil Procedure section 340.1 through Assembly Bill No. 218 to add its treble damages provision.   Having reviewed these materials, we do not regard them as probative of the Legislature's intent in this respect.

there are no clear indications within the statutory text, the expected application of section 340.1(b)(1), or otherwise of a nonpunitive purpose or purposes that carry sufficient force here as to compel a different characterization.

### 3. *Case Law Cited by Plaintiff Is Distinguishable*

Plaintiff asserts that several Court of Appeal decisions support her view that section 818 does not preclude the recovery of enhanced damages under section 340.1(b)(1) from a public entity. We conclude that those matters are all fundamentally distinguishable from the circumstances before us and thus do not provide significant support for plaintiff's position. These distinctions also mean we need not pass on whether those cases were properly decided, or entirely correct in all their particulars.

*Hill v. Superior Court* (2016) 244 Cal.App.4th 1281 did not involve Government Code section 818 or a treble damages provision. It instead addressed whether the double damages authorized under Probate Code section 859 for the improper taking, concealment, or disposal of a vulnerable person's property were a kind of punitive or exemplary damages that, pursuant to Code of Civil Procedure section 377.42, cannot be recovered against the successor of a deceased defendant. (*Hill*, at pp. 1285–1286.) *Hill*, like this case, involved a prohibition on the recovery of certain enhanced damages. But here we are concerned with the availability of treble damages, not double damages (cf. *Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 784 [regarding an amendment to the federal False Claims Act (31 U.S.C. § 3729 et seq.) that increased the available damages from double damages to treble damages as making its remedies "essentially punitive"]), and we are construing an altogether different pair

of statutes.  The court in *Hill* perceived Code of Civil Procedure section 377.42 as recognizing a strict distinction between " 'punitive or exemplary damages' " (*Hill*, at p. 1285, quoting Code Civ. Proc., § 377.42) on the one hand and a "statutory penalty," including treble damages, on the other (*Hill*, at p. 1286).  Here, as explained previously, the language of section 818 and the intent behind this text call for a more functional analysis that does not cleave in quite the same manner.  Under the analysis that applies here, enhanced damages under section 340.1(b)(1) may be regarded as "other damages imposed primarily for the sake of example and by way of punishing the defendant" (§ 818) and thus incapable of being recovered against a public entity.

Next, the issue presented in *Beeman v. Burling* (1990) 216 Cal.App.3d 1586 and *Kelly v. Yee* (1989) 213 Cal.App.3d 336 was whether an award of treble damages authorized under a local rent ordinance was preempted by Civil Code section 3294.  These courts concluded that there was no conflict warranting a finding of preemption because the ordinance's automatic trebling of damages awards and the role of this trebling in promoting enforcement of the rent ordinance distinguished the treble damages provision from punitive damages awarded under Civil Code section 3294.  (See *Beeman*, at pp. 1597–1598 [discussing the character of the ordinance's treble damages provision]; *Kelly*, at p. 342 [explaining that trebling of actual damages serves to "promote effective enforcement of the ordinance on behalf of low-income tenants"].)  In light of the differences between the legal issues, treble damages provisions, and underlying claims involved in those cases and this one, there is no manifest inconsistency between the outcomes in *Beeman* and *Kelly* and our determination that enhanced

damages under section 340.1(b)(1) are "imposed primarily for the sake of example and by way of punishing the defendant." (§ 818.)

In *LeVine v. Weis* (2001) 90 Cal.App.4th 201 (*LeVine*), the court concluded that section 818 did not prohibit an award of double back pay under Government Code section 12653, part of the state False Claims Act (Gov. Code, § 12650 et seq.), against a public entity. (*LeVine*, at p. 209.) In so holding, the court emphasized that Government Code section 12653 expressly distinguishes between back pay and punitive damages in its description of available remedies, and lists back pay among the kinds of relief necessary to make an employee " 'whole.' " (*LeVine*, at p. 209, quoting Gov. Code, § 12653, former subd. (c).) These features persuaded the Court of Appeal that "the statute treats double backpay as remedial" (*LeVine*, at p. 209), and serve to distinguish the section 818 question that was before that court from the one we address here.

*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049 involved a claim that a defendant was "guilty of recklessness, oppression, fraud, or malice in the commission of [elder or dependent adult] abuse . . . ." (Welf. & Inst. Code, § 15657.) Upon a sufficient showing of such misconduct, the plaintiffs could recover attorney fees and costs as well as pain and suffering damages that otherwise would have been prohibited under Code of Civil Procedure section 377.34. (Welf. & Inst. Code, § 15657, subds. (a), (b).) The Court of Appeal in *Marron* determined that Government Code section 818 did not prohibit holding a public entity liable for these awards, reasoning that "[p]unitive damages are *dissimilar* to pain and suffering and other compensatory damages" (*Marron*, at p. 1063), that the pain and suffering damages provided compensation for the

decedent's *"actual loss or injury"* (*id.* at p. 1062), and that the relevant legislative history and codified findings established that Welfare and Institutions Code "[s]ection 15657's authorization of awards of attorney fees and costs was intended to act as an incentive for attorneys to accept elder or dependent adult abuse cases that involve recklessness or more egregious conduct" (*Marron*, at p. 1064). The court also saw nothing in the statute or its history to suggest "that awards of reasonable attorney fees and costs under [Welfare and Institutions Code] section 15657 are intended to punish defendants." (*Id.* at p. 1065.) *Marron* thus involved different kinds of awards from those involved in this case — one of which simply removed an otherwise applicable limitation on compensatory damages — and there the Legislature appears to have provided more evidence of nonpunitive intent than exists here.[11]

Similarly distinguishable is *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261 (*Los Angeles Transportation Authority*), in which the court considered a challenge to the imposition of statutory penalties under Civil Code section 52 for violations of Civil Code section 51.7, the Ralph Civil Rights Act of 1976. The Court of Appeal in *Los Angeles Transportation Authority* determined that these penalties could be imposed upon a public

---

[11]     The Legislature recently amended Code of Civil Procedure section 377.34 to provide that "in an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable may include damages for pain, suffering, or disfigurement if the action or proceeding was granted a preference pursuant to [Code of Civil Procedure] [s]ection 36 before January 1, 2022, or was filed on or after January 1, 2022, and before January 1, 2026." (*Id.*, subd. (b), added by Stats. 2021, ch. 448, § 1.)

entity, Government Code section 818 notwithstanding. (*Los Angeles Transportation Authority*, at pp. 263–264.) Among the distinctions between this case and *Los Angeles Transportation Authority*, Civil Code section 52 separately authorizes both exemplary damages (*id.*, subd. (b)(1)) and penalties (*id.*, subd. (b)(2)) for violations of Civil Code section 51.7; the penalties authorized under section 52 are fixed at $25,000, and not tethered to actual damages (*id.*, subd. (b)(2)); and there were more compelling indications that legislators regarded penalties under Civil Code section 52 as having an important nonpunitive function than appears in the legislative history for Assembly Bill No. 218 (*Los Angeles Transportation Authority*, at pp. 268–271).[12]

---

[12]    We note that portions of the analysis in *Los Angeles Transportation Authority*, *supra*, 123 Cal.App.4th 261 relied heavily on our characterization of section 818 as concerned exclusively with damages that are "simply and solely punitive" (*San Francisco Civil Service Assn.*, *supra*, 16 Cal.3d at p. 50; *Younger*, *supra*, 16 Cal.3d at p. 39) or "simply or solely punitive" (*Kizer*, *supra*, 53 Cal.3d at p. 145), an understanding of the statute that we have rejected today. (*Los Angeles Transportation Authority*, at pp. 272–275.) Similarly, the court in *LeVine*, *supra*, 90 Cal.App.4th 201 drew from our now-repudiated analysis of section 818 in *Younger* in characterizing double back pay as having "a legitimate and fully justified compensatory function," to wit, serving "to more fully compensate the employee for the incalculable risk he takes when he threatens to disclose or discloses his employer's false claim." (*LeVine*, at p. 209.) Although such reliance on *Younger* and its progeny is no longer permitted, we do not otherwise believe it necessary to review the reasoning of these decisions beyond what we have discussed in the main text.

To summarize, due to differences in the issues they involved, the statutes they interpreted, and the prominence and plausibility of the nonpunitive rationales they considered, the Court of Appeal decisions described above neither conflict with our holding today nor suggest that we should interpret or apply section 818 differently than we have.

In closing, we observe that our decision today does not in any way minimize the trauma that victims of childhood sexual assault must endure. Yet our job is to interpret Code of Civil Procedure section 340.1 as written, relying on the guideposts the Legislature has provided and our own interpretive tools. As it appears before us, the statute, read in conjunction with Government Code section 818, does not reveal an intent to have section 340.1(b)(1) apply to public entities. The Legislature may as a matter of course choose to revisit the issue if it believes that these entities should potentially be held liable for enhanced damages when a childhood sexual assault is the result of a cover up.

## III. DISPOSITION

We hold that Government Code section 818 prohibits the imposition of enhanced damages under Code of Civil Procedure section 340.1, subdivision (b)(1) against a public entity. We therefore affirm the judgment of the Court of Appeal.


**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Los Angeles Unified School District v. Superior Court

_____

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 64 Cal.App.5th 549
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S269608
**Date Filed:** June 1, 2023

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Shirley K. Watkins

_____

**Counsel:**

Gutierrez, Preciado & House, Calvin House and Arthur C. Preciado for Petitioner.

Leone Alberts & Duus, Louis A. Leone and Seth L. Gordon for Northern California Regional Liability Excess Fund, Southern California Regional Liability Excess Fund, Statewide Association of Community Colleges and School Association for Excess Risk as Amici Curiae on behalf of Petitioner.

Meyers Fozi & Dwork, Golnar J. Fozi and Daniel S. Modafferi for Association of Schools for Cooperative Insurance Programs, Public Risk Innovation, Solutions, and Management and California Association of Joint Powers Authorities as Amici Curiae on behalf of Petitioner.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Cummings, McClorey, Davis, Acho & Associates and Ryan D. Miller for Hesperia Unified School District as Amicus Curiae on behalf of Respondent.

Taylor & Ring, David M. Ring, Natalie L. Weatherford; Esner, Chang & Boyer, Holly N. Boyer, Kevin K. Nguyen and Kathleen J. Becket for Real Party in Interest.

The Zalkin Law Firm and Devin M. Storey for National Center for the Victims of Crime as Amicus Curiae on behalf of Real Party in Interest.

Alan Charles Dell'Ario for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Calvin House
Gutierrez, Preciado & House, LLP
3020 East Colorado Boulevard
Pasadena, CA 91107
(626) 449-2300

Holly N. Boyer
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
(626) 535-9860